Billie M. SIMONS, individually and as executrix of the estate of G. A. Simons, deceased, Plaintiffs in Error,

v.

BRASHEARS TRANSFER AND STORAGE, a partnership composed of J. B. Brashears and J. E. Brashears, Defendant in Error.

No. 38399.

Supreme Court of Oklahoma.

Sept. 15, 1959.

Rehearing Denied Oct. 20, 1959.

Smith, Inglish & Gray, Okmulgee, Robert R. Smith, Tulsa, for plaintiffs in error.

C. D. Lewis, Okmulgee, for defendant in error.

JACKSON, Justice.

This action was commenced by Billie M. Simons, individually, as plaintiff, to replevin certain furniture which had been stored with defendant, Brashears Transfer and Storage. The defendant filed a motion alleging that the property claimed by plaintiff had been stored together with other property owned by her deceased husband, G. A. Simons, as one lot, and that all of said property had been sold by and to defendant to pay storage charges by reason of which Billie M. Simons, executrix of the estate of G. A. Simons, was a necessary party. The court thereupon made the executrix a party to the action. Thereafter the executrix, on behalf of the estate, filed a cross petition against defendant for double damages under 58 O.S.1951 § 292, claiming that prior to the granting of letters testamentary defendant had sold and converted that part of the furniture owned separately by deceased. The actions were tried to the court without a jury. Judgment was rendered in favor of defendant as to both actions. Plaintiff, Billie M. Simons, individually, and as executrix of the estate of G. A. Simons, appeals.

We will consider the two actions separately, and will first consider the executrix' action on behalf of the estate for double damages under the special statute. We will assume that part of the furniture stored with defendant and sold by defendant was owned by G. A. Simons.

G. A. Simons died testate December 12, 1956. Plaintiff, Billie M. Simons, was appointed executrix but prior to such appointment the defendant conducted a public sale on March 8, 1957, to satisfy its warehouseman's lien pursuant to 2 O.S.1957 Supp. § 9–86 to 9–95 inclusive. All the property was ostensibly sold to a third person, who delivered a check in payment therefor. However possession was never transferred. After letters were granted, another sale was conducted on May 31, 1957, and the property was bid in by the defendant. Defendant retained and still retains possession.

58 O.S.1951 § 292, provides:

"If any person, before the granting of letters testamentary or of administration, embezzles or alienates any of the moneys, goods, chattels or effects of a decedent, he is chargeable therewith, and liable to an action by the executor or administrator of the estate, for double the value of the property so embezzled or alienated, to be recovered for the benefit of the estate."

In Litz v. Exchange Bank of Alva, 15 Okl. 564, 83 P. 790, a chattel mortgagee, in rightful possession, advertised and sold the mortgaged property to a third person prior to the appointment of a personal representative. The sale was legal and proper in all respects, except for the fact that it was conducted prior to such appointment. Possession was transferred to the purchaser. We held that the right to sell was suspended until the appointment and, therefore, the mortgagee was liable for double the value of the property so alienated. But in Nichols & Shepard Co. v. Dunnington, 118 Okl. 231, 247 P. 353, 355, we held, under a similar fact situation, that the mortgagee was not liable where it bid in the property and remained in possession. In the body of the opinion, we said:

"The term 'alienate,' as used in section 1220, C.O.S.1921, signifies the wrongful transfer of such property to another. Aultman & Taylor Machinery Co. v. Fuss, 86 Okl. [168], 169, 207 P. 308; 2 C.J. 1034. In Jahns v. Nolting, 29 Cal. 508, the court, discussing a statute practically identical with this section, says:

" 'To alienate, signifies to wrongfully transfer such property to another.'

"And in the case of Litz v. Exchange Bank of Alva, 15 Okl. 564, 83 P. 790, relied on by the plaintiff, it is expressly pointed out that the property was sold by the defendant and *possession passed to other parties.*

"In the case at bar there was no such transfer. True, the defendant offered to sell this property after the death of Messick, and before the administrator was appointed, but offering to sell it is not sufficient. Bidding it in in behalf of the defendant and remaining in possession in no way changed the status:

" 'A void attempt to foreclose a chattel mortgage, in which the mortgagee bids in and retains the property is not a conversion.' Powell v. Gagnon, 52 Minn. 232, 53 N.W. 1148.

"Much less an alienation or a transfer of such property to another.

" 'Where personal property seized by a mortgagee upon a chattel mortgage is sold at a formal, but abortive, foreclosure sale, to the mortgagee himself, who retains possession of the property, the sale does not affect the rights or liabilities of *either party to the mortgage,* whether the seizure be wrongful or not.' Cushing v. Seymour, Sabin & Co., 30 Minn. 301, 15 N.W. 249." (Emphasis supplied.)

In the instant case there was no transfer of possession, but plaintiff contends that title passed to the third-party buyer at the auction sale which constituted an alienation or conversion of the property. It is argued that an alienation includes not only a transfer of possession, but a transfer of title, cit-

ing 2 C.J. 1034. There could be merit in this argument if title passed. If in fact title passed it could be said that plaintiff has been damaged. The third person to whom the property was allegedly sold was not a party to this action. Therefore, the judgment of the trial court that the first sale was not completed would not necessarily be binding upon him, and if he has title to the property he might be successful in a subsequent action to recover possession of same. While we cannot determine the rights, if any, of the third party to the property in question, the present controversy cannot be settled without determining, as between the parties to this action, whether the defendant alienated the property. As heretofore pointed out, defendant did not transfer possession to the third party, and in our opinion did not transfer title.

In Litz v. Exchange Bank of Alva, supra, we held that a lienor's right to sell the property upon which he has a lien was suspended during the interim between death of the owner and appointment of a personal representative. In another part of the opinion the court apparently considered "power" to sell as synonymous with "authority" to sell. A lienor has no title. His power to transfer title exists only by reason of his contractual or statutory right to sell. If such right does not exist, or is suspended, then it follows that he cannot transfer title.

In Aultman & Taylor Machinery Co. v. Fuss, 86 Okl. 168, 207 P. 308, 309, it was said:

"A party who wrongfully takes possession of the property of a decedent after his death and prior to the time of the appointment of administrator cannot pass title even if he does alienate the same. If he alienates the same and transfers the possession to a third party, this is all he can do, and amounts to wrongful conversion and alienation of the property."

It is true that in the instant case the defendant did not wrongfully take possession, but the fact that possession was right-

ful did not enable defendant to transfer title. See the quotation from Cushing v. Seymour, Sabin & Co., 30 Minn. 301, 15 N.W. 249 in Litz v. Exchange Bank of Alva, supra. In 6 Am.Jur. Bailments, § 126, it is stated:

"If one delivers property to another as a mere bailee, a purchaser from the bailee, however innocent he may be, acquires no title as against the bailor, for the sale, exchange, pledge, mortgage, or other transfer of property by a bailee in possession thereof, though to an innocent purchaser, does not divest the title of the bailor, and he may recover the property or its value from the vendee or transferee in an appropriate form of action."

In 46 Am.Jur. Sales § 464, it is stated:

" * * * even a bona fide purchaser of personal property from one who does not have title or the right to sell is not protected from the holder of the legal title."

■ In some cases a bailor is estopped to deny the title of the transferee. 6 Am. Jur., Bailments, § 128. But even in such cases title does not pass. The bailor is merely estopped to claim title because of *his* conduct. Since defendant did not transfer possession, and could not transfer title, it did not alienate the property by the purported sale conducted on March 8, 1957, and the trial court's judgment denying damages to the executrix was correct.

The executrix places primary reliance upon Billings v. Porterfield, 81 Okl. 218, 198 P. 94. In that case plaintiff's property was stored with Billings. Thereafter Billings transferred possession to Kee. Kee attempted to sell the property at a void foreclosure sale. Billings, the bailee, bid the property in at the sale. The jury returned a verdict against both Billings and Kee for conversion. The court approved the verdict against both. The opinion is difficult to understand because it does not disclose what if anything was done with the property after the abortive sale. And certain references to a "paper sale" suggest

that possibly, as in the instant case, there was neither a transfer of possession from the bailee nor a withholding of the property from the plaintiff. However, since the opinion does not affirmatively disclose the facts in this regard it cannot be considered as authority either for or against plaintiff's contention.

In the interest of eliminating any confusion as to the holding in the above mentioned case, we examined the briefs and the record therein. The record discloses that after Billings purchased the property it was transferred to the H–K Furniture Company, a corporation. Thereafter, the corporation disposed of most of the property at retail. These facts show that Billings was guilty of conversion. Billings argued that the sale by him to H–K Furniture Company was a mere "paper sale," because there was no physical transfer of possession from him to the company, since the company had possession prior to the sale, or else acquired possession direct from Kee. This was obviously without merit. The court said this was no different than had possession passed direct from Billings to the company.

We now consider plaintiff's individual action in replevin. Plaintiff does not seek to recover damages for conversion as to her separate property. She seeks to recover possession. If the record sale of May 31, 1957, was valid plaintiff cannot prevail, because if that sale was valid the defendant is the rightful owner of the property and entitled to possession thereof. Plaintiff presents her argument in this respect under seven propositions. All but one are essentially based upon the theory that defendant waived its lien, and therefore, it had no right to sell and bid in the property.

■ It is argued that defendant's lien claim was excessive because it charged more for insurance than it should have. In this action defendant is not seeking a deficiency judgment; therefore the fact that its claim was excessive is immaterial, unless it can be said that the excessive demand consti-

tuted a waiver of the lien. In this connection plaintiff quotes 37 C.J. 340, as follows:

"* * * But if the demand of a larger sum is so made that it amounts to an announcement that it is useless to tender a smaller sum, it dispenses with any tender and amounts to a waiver of the lien."

Immediately preceding the above quote appears the following language:

"The mere demand of an excessive sum by a creditor holding a lien does not dispense with a tender or waive the lien for the amount actually due, if his demand is made in good faith and in the belief that he is entitled to such sum, and no payment or tender is made of the amount actually due." See also 53 C.J.S. Liens § 17.

■ By its general finding that the second sale was a valid sale the court could have found that the excessive demand was in good faith, and therefore did not dispense with the necessity of a tender and did not amount to a waiver of the lien. In Douglas v. Douglas, 176 Okl. 378, 56 P.2d 362, 363, it was held in the first paragraph of the syllabus as follows:

"Where a judgment might have been based upon either of two or more grounds but the specific ground is not pointed out, the judgment will not be disturbed upon appeal if the evidence supports it on either ground."

This was a law action and there is sufficient evidence to support a finding that the excessive demand was made in good faith. In Simmons v. Maxey, 106 Okl. 252, 233 P. 659, it was held in the first paragraph of the syllabus as follows:

"Where an appeal is prosecuted from the judgment of the trial court in a jury case tried to the court without a jury, the Supreme Court is not required to examine and weigh the evidence for the purpose of determining whether or not the findings and judgment are supported by the weight of the evidence or otherwise, but will examine the evidence for the purpose of determining whether or not, as a matter of law, there is any competent evidence in the record reasonably supporting the findings and judgment of the trial court, and where it is found that there is competent evidence in the record, reasonably supporting the findings and judgment of the trial court the judgment appealed from will not be disturbed on appeal because of alleged insufficiency of the evidence."

■ It is further contended that the lien was waived by defendant's failure to accept plaintiff's tender and by commingling plaintiff's property with that of her deceased husband. Plaintiff testified that prior to either sale "I told them that I was ready and willing to take my property if I owed anything on it, and I didn't figure that I owed anything on it at that time." This statement, coupled with a continuing demand by defendant that plaintiff pay the storage on all the property, and a refusal to render a statement on plaintiff's separate property might have discharged the lien on her separate property if plaintiff's property and her husband's property was placed for storage under separate accounts.

If, however, it was the intention of the parties that the property should be stored together under one account then a tender of all amounts due on plaintiff's separate property, coupled with a demand by defendant that she pay the amount due on all the property, would not discharge the lien on plaintiff's separate property.

Here, again, the trial court could have found that the property was placed for storage under one account pursuant to the intent and agreement of all the parties. There is substantial evidence to support such a finding. The account was carried in the name of both plaintiff and her husband. Defendant's evidence was to the effect that the negotiations for the storage of all the furniture was conducted with both plaintiff and her husband, at the same

time; that the fact the ownership of the property was divided was never mentioned; and that it was all placed in storage as one group.

In addition to the foregoing, there was evidence that after the death of her husband plaintiff told defendant that if she didn't pay defendant $2,000 by Feb. 10, 1957, she would release all claim on the property and defendant could sell it. This amount was not paid; therefore, if the trial court believed this evidence he would have been justified in concluding that the sale at which defendant bid the property in was conducted under an express power of sale.

Finally plaintiffs in error contend that the sections of the statute under which the property was sold are unconstitutional.

This question was not raised in the pleadings nor was it called to the court's attention during the trial, so far as we can ascertain from the record. It was first urged in the motions for new trial. In Brewer v. Asher, 8 Okl. 231, 56 P. 714, we said:

"Another contention of plaintiff in error is that the referee to whom the cause was referred was biased and prejudiced by reason of his connection with other actions pending, involving the same propositions of law and fact, and that the district court erred in not setting aside its appointment of said referee when its attention was called to the fact that said referee was biased and prejudiced in the matter. * * * If the plaintiff in error had desired to raise the question of the qualifications of the referee, it should have presented the same to the court by a motion to discharge the referee, or other ▮▮▮▮▮▮ appropriate motion. The question could not be properly presented, in the first instance, to the referee, or be reviewed by the court upon motion for new trial, as in this case it was sought to be presented. It was not an error of law occurring upon the trial, as it had never been presented to the court until after judgment, and therefore was not a ground for new trial. * * *."

In Kirk v. Gross, Okl., 270 P.2d 628, it is held in the syllabus as follows:

"When all parties appear and participate in full trial of an action within the court's jurisdiction, and no objection is made to the trial court's exercise of jurisdiction until after trial and judgment, it comes too late to contend for the first time in motion for new trial that the instant trial court should not have heard and determined the matter because a prior proceeding had been commenced by movant in another court wherein the particular issues in the decided cause might have been tried and determined."

▮▮▮▮ We think the same rule is applicable to a claim that a statute is unconstitutional. Since this question was not properly presented to the trial court, we will not consider it on appeal. We have held numerous times that we would not consider constitutional questions not raised in the trial court unless the public interest and welfare so requires. Garman v. Myers, 183 Okl. 141, 80 P.2d 624; Missouri, Kansas & Texas R. Co. v. Prince, 133 Okl. 228, 271 P. 253; First National Bank of Alex v. Southland Production Co., 189 Okl. 9, 112 P.2d 1087.

Affirmed.