**NORTHWEST DATSUN, Ken's Datsun, and Frazier Datsun, Appellants,**

v.

**OKLAHOMA MOTOR VEHICLE COMMISSION, Appellee,**

and

**Nissan Motor Corporation in U.S.A. and Jackie Cooper Datsun, Inc., Intervenors.**

**No. 61330.**

Supreme Court of Oklahoma.

May 5, 1987.

Derryberry, Duncan, Gray & Quigley by Larry Derryberry and Kim D. Parrish, Oklahoma City, for appellants.

Michael C. Turpen, Atty. Gen., and John D. Rothman, Asst. Atty. Gen., Oklahoma City, for appellee.

Crowe & Dunlevy, P.C. by Clyde A. Muchmore and Harvey D. Ellis, Jr., Oklahoma City, for intervenor Nissan Motor Corp. in U.S.A.

Ramey & Nelson by George H. Ramey, Yukon, for intervenor Jackie Cooper Datsun, Inc.

LAVENDER, Justice:

Appellants, Northwest Datsun, Ken's Datsun and Frazier Datsun initiated this action in district court seeking injunctive relief to prevent appellee Oklahoma Motor Vehicle Commission (OMVC) from licensing a new Datsun franchise granted to Jackie Cooper Datsun, Inc., by Nissan Motor Corporation in U.S.A. Appellants also sought a writ of mandamus to require OMVC to hear their protest regarding the establishment of the new franchise, and, additionally, sought a declaratory judgment regarding the adequacy of the rules promulgated by OMVC.

The trial court heard argument on the matter and denied all relief sought by appellants. We affirm the trial court's ruling on the grounds that appellants lacked standing to obtain any of the relief sought.

I.

In the case of *In re Application of State of Oklahoma ex rel. Department of Transportation,*[1] we stated:

As an aspect of justiciability, "standing" focuses on the party seeking to get his complaint before the court and not on the issues tendered for determination. In standing problems the inquiry posed is whether the party invoking the court's jurisdiction has a legally cognizable interest in the outcome of the tendered controversy. (footnote omitted)

1. 646 P.2d 605, 609 (Okla.1982).

In the present case the question is whether appellants' expressed interest in opposing the grant of a new Datsun franchise in the Oklahoma City area is a legally cognizable one.

Appellants claim that this interest is given justiciable status by our statutes governing the licensing and regulation of manufacturers, distributors and dealers of new automobiles.[2] One of those statutes, 47 O.S.1981 § 578, is directly addressed to this issue. It provides:

> In the event that a manufacturer seeks to enter into a franchise establishing an additional new motor vehicle dealership or relocating an existing new motor vehicle dealership within or into a relevant market area where the same line-make is then represented, the manufacturer shall in writing first notify the Oklahoma Motor Vehicle Commission and each new motor vehicle dealer in such line-make in the relevant market area of the intention to establish an additional dealership or to relocate an existing dealership within or into that market area. The relevant market area is any area within a radius of ten (10) miles from the site of a potential new dealership. Within fifteen (15) days of receiving such notice or within fifteen (15) days after the end of any appeal procedure provided by the manufacturer, any such new motor vehicle dealership may file with the Commission a protest to the establishing or relocating of the new motor vehicle dealership. When such a protest is filed, the Commission shall inform the manufacturer that a timely protest has been filed, and that the manufacturer shall not establish or relocate the proposed new motor vehicle dealership until the Commission has held a hearing, nor thereafter, if the Commission has determined that there is good cause for not permitting such new motor vehicle dealership. The Commission shall render a final decision no later than sixty (60) days after the Commission's receipt of the notice of protest. In any hearing held under this section on addi-

tional dealerships or relocation of dealerships the protesting dealer or dealers shall have the burden of proof. For the purposes of this section, the reopening in a relevant market area of a new motor vehicle dealership that has not been in operation for one (1) year or more shall be deemed the establishment [of] an additional new motor vehicle dealership. Furthermore, the relocation of an existing dealer within its area of responsibility shall not be subject to this section, provided the proposed relocation site is not within five (5) miles of an existing dealer of the same line-make.

This statute clearly does give standing to protest the establishment of a new dealer franchise to other dealers of the same line-make located within ten miles of the proposed site of the new franchise. However, in the present case, appellant dealers of the same line-make are not located within ten miles of the new franchise which they seek to challenge. The trial court correctly ruled that this statute did not grant appellants the requisite standing to require OMVC to consider their objection to the proposed new franchise.

Appellants also attempt to rely on language in 47 O.S.1981 § 561, stating the general purpose of the legislation. Appellants isolate certain elements of this language, to the effect that the legislation was intended to "promote the public interest and the public welfare" and to "prevent bankrupting of motor vehicle dealers, who might otherwise be caused to fail because of . . . unfair practices and competition." From this language, appellants argue that failure to provide for a channel by which they, or the general public, might challenge the establishment of any new franchised dealership in the state would violate the intent of the legislation. Appellants' argument violates common sense and the tenets of statutory construction.

While we are mindful of appellants' contention that the intent of the legislation is to be gathered from the legislation as a

**2.** 47 O.S.1981 §§ 561 through 580.2.

whole,[3] we are also mindful of the precept that the rules of statutory construction are to be applied only to remove doubt where doubt exists,[4] and that where the Legislature's intent is plainly expressed there is no room for application of the rules of construction.[5]

The legislation in question in part, is clearly designed to prevent unfair practices and unfair competition, which might occur as a result of the superior position which car manufacturers hold over their franchised dealers. The legislation contains specific provisions requiring any manufacturer engaged in business in this state to be licensed.[6] Further, the legislation provides that this license may be denied or revoked if a manufacturer engages in certain practices regarding their dealers which the Legislature has apparently classified as unfair.[7] One of the acts listed by the Legislature is the attempt to coerce a dealer into taking actions under the threat of awarding a franchise to another dealer in the same area of responsibility.[8] Appellants have not contended that the award of the new franchise they seek to protest was in any way connected with an attempt to coerce them into any actions.

There remains the stated purpose of the legislation to protect the dealers from unfair competition. We find the intent of the Legislature in this regard to be clearly and cogently expressed in 47 O.S.1981 § 578, as previously quoted. Under this provision it is apparent that the Legislature intended any new franchise granted within a certain area of a previously established franchise to be subject to review as a possible attempt by the manufacturer to damage the previously existing dealership through unfair competition. In this regard the Legislature set forth standards to be applied in determining whether the new franchise should be allowed. These standard are contained in 47 O.S.1981 § 579, which provides:

> In determining whether good cause has been established for not entering into or relocating an additional franchise for the same line-make, the Oklahoma Motor Vehicle Commission shall take into consideration the existing circumstances, including, but not limited to:
> 1. Permanency of the investment;
> 2. Effect on the retail new motor vehicle business and the consuming public in the relevant market area;
> 3. Whether it is injurious to the public welfare for an additional new motor vehicle dealership to be established;
> 4. Whether the new motor vehicle dealers of the same line-make in that relevant market area are providing adequate competition and convenient consumer care for the motor vehicles of the line-make in the market area which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of motor vehicle parts, and qualified service personnel; and
> 5. Whether the establishment of an additional new motor vehicle dealership would increase competition, and therefore be in the public interest.

As reflected in section 579(5), the Legislature was cognizant in passing this legislation that competition, if fair, is in the public interest. The Legislature made a choice in this legislation to regard the establishment of a new dealership in an area more than ten miles distant from an established dealer as presumptively fair competition and in the public interest. This legislation provides for no protest in that event, and it is quite clear that we may not infer an intent to the contrary.

It is also clear from the arguments presented here and before the trial court,

---

3. See *City of Midwest City v. Harris,* 561 P.2d 1357 (Okla.1977).

4. *Becknell v. State Industrial Court,* 512 P.2d 1180 (Okla.1973).

5. *Hughes Drilling Co. v. Morgan,* 648 P.2d 32 (Okla.1982); *Johnson v. Ward,* 541 P.2d 182 (Okla.1975).

6. 47 O.S.1981 § 564.

7. 47 O.S.1981 § 565(10).

8. 47 O.S.1981 § 565(10)(c).

that appellants' main concern was not the possible unfairness of the new competition, but was directed to the limited supply of Datsun automobiles available to the Oklahoma City market. It thus seems that appellants' concern was not with the fairness of the decision to establish a new franchise but with its wisdom. Our legislation protects appellants from unfair treatment regarding the distribution of this limited supply of automobiles.[9] It does not protect them from unwise marketing decisions by the manufacturers from whom they obtain their automobiles.

## II.

■ Appellants' challenge to the alleged inadequacy of OMVC's rules was in turn premised on their contention that they had been prejudiced by the failure of OMVC to promulgate rules under which they could lodge a protest against the establishment of the new Datsun franchise. In the case of *Adams v. Professional Practices Commission,*[10] we stated:

An administrative agency may not under the guise of its rule making power exceed the scope of its authority and act contrary to the statute which is the source of its authority. Its authority to make rules for its various procedures does not include authority to make rules which extend their powers beyond those granted by statutes. *Boydston v. State,* 277 P.2d 138, 139 (Okl.1954). *California Employment Commission v. Kovacevich,* 27 Cal.2d 546, 165 P.2d 917, 921 (1946). It is, however, necessary and proper for administrative agencies to adopt rules of procedure as to matters coming under its jurisdiction. *Bruce Motor Freight v. Lauterbach,* 247 Iowa 956, 77 N.W.2d 613, 616 (1956).

As we have stated, the legislation in question, which creates OMVC and is the source of its authority, provides that protests, such as appellants contemplate, may

be allowed in certain circumstances. The legislation does not provide for protests outside of those circumstances. Any attempt by OMVC to provide for protests outside of those authorized by the legislation would be beyond its authority. For this reason appellants again lack a legally cognizable interest in the issue tendered for determination. Appellants may not be seen to be prejudiced by the failure of OMVC to make rules which OMVC lacked the authority to promulgate. As stated by this Court in *Democratic Party of Oklahoma v. Estep,*[11] "One who is not 'aggrieved' by a decision—however erroneous— may not bring a challenge to its validity."

## III.

■ Appellants additionally attempt to bring an equal protection challenge to the constitutionality of 47 O.S.1981 § 578, on the ground that there is no rational basis for the ten mile classification regarding who may bring protests. The question of the constitutionality of this legislation was not presented to the trial court and appears to be raised for the first time in the briefs on appeal. As our review of the present case does not indicate that the public interest and welfare so requires, we decline to consider the constitutional question raised on appeal.[12]

## IV.

The ruling of the trial court is AFFIRMED.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

SIMMS, J., concurs in judgment.

KAUGER, J., disqualified.

9. See 47 O.S.1981 § 565(10)(a).

10. 524 P.2d 932, 934 (Okla.1974); and see *Marley v. Cannon,* 618 P.2d 401 (Okla.1980).

11. 652 P.2d 271, 274 (Okla.1982).

12. *Simons v. Brashears Transfer and Storage,* 344 P.2d 1107 (Okla.1959); and see also *Pelican Production Corp. v. Mize,* 573 P.2d 703 (Okla. 1977).