Dear Senator Hobson,
¶ 0 This office has received your request for an official Opinion addressing, in effect, the following questions:
1. Do the Department of Environmental Quality rules, embodied inOAC 252:510-21-6(1) and OAC 252:520-23-51(1), creating the trustfund mechanism for providing closure and postclosure financialassurance for solid waste landfills, violate 27A O.S. Supp.1996, § 2-10-701(B) (D) which requires that a sufficientamount of assurance remain in effect until completion of theclosure and postclosure phases?
2. Does the Department of Environmental Quality's practice ofpermitting the use of off-site scales at landfills violate 27AO.S. Supp. 1996, § 2-10-802(A)(1) which requires that allowners and operators of landfill disposal sites install scales byJanuary 1, 1996?
 INTRODUCTION
¶ 1 The issues presented by these questions will be addressed through examination of the statutes and rules relating to requirements with which solid waste landfill owners must comply and to the requirements placed on the location of scales used to weigh solid waste coming into a landfill. The statutory provisions governing the operation of solid waste landfills are located in the Solid Waste Management Act, 27A O.S. Supp. 1996,§§ 2-10-101-2-10-1111 ("the SWMA"). Under the SWMA, the Environmental Quality Board ("the Board") has authority to promulgate rules for solid waste management including, but not limited to, the "permitting, posting of security, construction, operation, closure, maintenance and remediation of solid waste disposal sites." 27A O.S. Supp. 1996, § 2-10-201[27A-2-10-201](A)(1). The rules relating to solid waste disposal are codified at OAC252:510-1-1 though 252:520-23-55. The Department of Environmental Quality ("the Department") has authority to "[r]eview and act upon applications for solid waste disposal site permits and inspect construction, operation, closure and maintenance of solid waste disposal sites." 27A O.S. Supp. 1996, § 2-10-202[27A-2-10-202](A)(4).
 I. VALIDITY OF BOARD'S RULES ALLOWING OWNERS OF SOLID WASTE LANDFILLS TO UTILIZE THE TRUST FUND MECHANISM OF PROVIDING FINANCIAL ASSURANCE FOR SOLID WASTE LANDFILLS
¶ 2 Under the SWMA, all disposal site owners are required to provide a closure plan to the Department for approval which defines operational phases and includes cost estimates, plans and specifications for final closure. 27A O.S. Supp. 1996, §2-10-701[27A-2-10-701]. Final closure is defined by the SWMA as "those measures for providing final capping material, proper drainage, perennial vegetative cover, maintenance, monitoring and other closure actions required for the site by rules of the Board."27A O.S. Supp. 1996, § 2-10-103[27A-2-10-103](5). Owners of landfills that receive household solid waste or commercial non-hazardous industrial waste are required to provide for the maintenance and monitoring of the landfill for thirty years. 27A O.S. Supp.1996, § 2-10-701[27A-2-10-701](A)(1).
¶ 3 In addition, Section 2-10-701 establishes financial assurance requirements for owners of solid waste landfills. Specifically, that section, in pertinent part, requires that:
 A. All disposal site owners shall provide a closure plan to the Department of Environmental Quality for approval. . . .
 B. The Department shall require that financial assurances be provided in an amount sufficient to cover the estimated cost of closure and any postclosure. . . .
 C. 1. Disposal site owners shall provide financial assurance to guarantee the performance of final closure and for any required postclosure. . . .
 2. The financial assurance shall be in a form described in rules promulgated by the Board or the owner may provide the Department with cash or certificates of deposit payable to the Department of Environmental Quality Revolving Fund for deposit with the State Treasurer's Office.
 D. When financial assurance is required, it shall remain in effect until closure and any postclosure is completed. The amount of such assurance shall be set by the Department and shall not be less than the anticipated cost of contracting for performance of each phase of the closure plan and postclosure.
1997 Okla. Sess. Laws ch. 371, § 3 (to be codified as 27A O.S.Supp. 1997, § 2-10-701[27A-2-10-701]).
¶ 4 Thus, under Section 2-10-701(C)(1), landfill owners must provide financial assurances to the Department to guarantee the performance of final closure and any postclosure. The Department is directed to require that the financial assurances be provided in "an amount sufficient to cover the estimated cost of closure and postclosure" and the amount of financial assurance required to be provided by the owner "shall not be less than theanticipated cost of contracting for performance of each phase of the closure plan and postclosure." 27A O.S.Supp. 1996, §2-10-701[27A-2-10-701](B) (D). When financial assurance is required, the SWMA provides that "it shall remain in effect until closure andany postclosure is completed." 27A O.S.Supp. 1996, §2-10-701[27A-2-10-701](D). The SWMA also requires the financial assurance to be "in a form described in rules promulgated by the Board or the owner may provide the Department with cash or certificates of deposit." 27A O.S.Supp. 1996, § 2-10-701[27A-2-10-701](C)(2). The Board has promulgated rules which create several mechanisms of providing financial assurance for closure and postclosure.
¶ 5 Under the trust fund mechanism, the owner or operator may satisfy the financial assurance requirements by making annual payments into a trust fund during a set pay-in period. OAC252:510-21-6(1) and 252:520-23-51(1). The pay-in period is the term of the initial permit or over the remaining life of the site, whichever is shorter. The first payment into the trust fund is required to be made prior to the initial receipt of waste at the landfill, and must be equal to the current cost estimate for closure or postclosure divided by the number of years in the pay-in period. The amount of subsequent payments are determined by subtracting the current value of the trust fund from the current cost estimate and dividing by the number of years remaining in the pay-in period. OAC 252:510-21-6(1)(C) and OAC252:520-23-51(1)(C).
¶ 6 It is essential to the validity of administrative rules and regulations that the agency making the same be fully authorized to do so either by statutory provision or by implication. W.S.Dickey Clay Mfg. Co. v. Ferguson Investment Company,388 P.2d 300, 303 (Okla. 1963). The Board is given express authority to promulgate rules identifying the potential mechanisms for providing financial assurance under Section 2-10-701(C)(2). However, because agencies may not exceed the scope of their statutory authority, all of the mechanisms established by the rules must comply with the statutory requirements for financial assurance established by the Legislature in the SWMA. SeeNorthwest Datsun v. Oklahoma Motor Vehicle Commission,736 P.2d 516, 520 (Okla. 1987).
¶ 7 When interpreting statutes, the "goal is to ascertain and, if possible, give effect to the legislative intent and purpose as expressed in the statute." Bank of Oklahoma v. Welco,898 P.2d 172, 176 (Okla. 1995). "There is no room for construction or provision for further inquiry when the Legislature plainly expresses its intent." Hughes Drilling Co. v. Morgan,648 P.2d 32, 35 (Okla. 1982). Although the SWMA does not specifically state that the total amount of financial assurance be posted prior to opening a landfill, the SWMA does state, in Section 2-10-701, that the financial assurance must (1) be equal to the anticipated costs under subsection B, and (2) remain in effect until closure and any postclosure is completed under subsection D. Further, the Legislature made it clear in subsection C(1) that the purpose of providing financial assurance is to guarantee the performance of final closure and any required postclosure. 27AO.S. Supp. 1996, § 2-10-701[27A-2-10-701](B), (D) (C)(1).
¶ 8 When the statute is read as a whole, it is not possible to reasonably construe Section 2-10-701 in a manner which would give the Department the authority necessary to promulgate the trust fund rules. If an owner chooses the trust fund mechanism, the financial assurance is set by the Department in an amount equal to the cost of closure and postclosure as is mandated under subsection B of 27A O.S. Supp. 1996, § 2-10-701[27A-2-10-701]. However, the amount of financial assurance is divided by the term of the initial permit or life of the site, and the owner is allowed to make annual payments into the trust which represent only a fraction of the total funds needed to close and maintain the landfill.
¶ 9 For example, if a permit is granted for twenty years and the financial assurance is set at $1,000,000, the owner will only post five percent of the amount required the first year, and the Department will only have $20,000 available to close and monitor the site. This amount is not related in any way to the amount necessary to close the landfill at the end of the first year of operation, and the total amount of required funds will not be available to the Department until twenty years after the site is closed. Although the trust fund remains in effect until completion of closure and postclosure, the requirements of subsections B and D are not met because the amount of assurance provided is not equal to the anticipated costs throughout the life of the site. Further, contrary to the purpose of Section 2-10-701, the trust fund mechanism does not guarantee that owners will be able to perform closure and postclosure at solid waste landfills. 27A O.S. Supp. 1996, § 2-10-701[27A-2-10-701](C)(1).
¶ 10 Section 2-10-701 requires that the Department, by rule, establish mechanisms which guarantee performance of closure and postclosure at landfills by ensuring that the funds necessary to meet closure and postclosure costs will be available whenever they may be needed. The trust fund mechanisms established by OAC252:510-21-6(1) and 252:520-23-51(1) violate the requirements of Section 2-10-701 of Title 27A because the owner of the site is only required to make a portion of the those funds available during the operation of the landfill and the total amount is not accessible by the Department until the site is closed or the operating permit expires.
 II. DEPARTMENT AUTHORITY TO ALLOW OWNERS AND OPERATORS TO WEIGH SOLID WASTE ON SCALES WHICH ARE NOT LOCATED AT THE LANDFILL
¶ 11 The Department's authority to allow certain owners and operators to use scales located off-site is defined by the provisions of the SWMA. "[A]n agency created by statute may exercise only those powers granted and may not expand those powers by its own authority." City of Hugo v. State,886 P.2d 485, 492 (Okla. 1994). In addition, an administrative agency must comply with the express mandates of its enabling statute. Duncanv. Askew, 251 P.2d 515, 516 (Okla. 1952). Thus, the Department cannot allow owners and operators to utilize scales which are not located at a landfill disposal site if on-site location of the scales is required by the SWMA without exception.
¶ 12 In order to determine whether the SWMA requires scales to be located on-site, the language must be reviewed to ascertain and give effect to the intention of the Legislature as it is expressed in the statute. State v. Oklahoma Property CasualtyInsurance Guaranty Association, 796 P.2d 352, 354 (Okla. 1990). The Legislature declared, under Section 2-10-801(A) of the SWMA, that "[i]n order to protect public health and preserve the expectation of future disposal capability of areas local to a disposal site, except as otherwise provided by this section, no disposal site shall accept more than two hundred (200) tons per day of solid waste generated more than fifty (50) miles from the disposal site." Section 2-10-802(A)(1) of the SWMA establishes the statutory requirements that owners and operators of solid waste landfill disposal sites must follow when weighing the waste received for disposal.
¶ 13 Section 2-10-802(A)(1) provides that "[o]wners or operators of landfill disposal sites . . . shall install scales by January 1, 1996." The Legislature's use of the word shall "is normally considered as a legislative mandate equivalent to the term `must,' requiring interpretation as a command" in the absence of contrary legislative intent. Heirshberg v. Slater,833 P.2d 269, 275 (Okla. 1992). Because there is nothing in the statute that provides an exception to this directive, this provision must be interpreted as a legislative command to owners and operators of landfill disposal sites to install scales by January 1, 1996.
¶ 14 Although Section 2-10-802(A)(1) does not specify where the scales are required to be installed, there is an implication that the scales should be located at the landfill disposal site because the statute is directing the owners of the site to install the scales for the purpose of weighing waste coming into the disposal site. In addition, Section 2-10-802(A)(2) states that "[t]he owner or operator shall upon receipt weigh all waste received" and "[i]f scales at a disposal site are not operative, tonnage shall be estimated on a volume basis."
¶ 15 While none of these provisions alone specifically states that the scales are to be located on-site, a reading of the section as a whole does establish that owners and operators of landfill disposal sites are required to install scales, weigh the waste coming into the landfill upon receipt and use alternate methods of estimating volume if the scales at the disposal site are not operative. In construing a statute, the intention or purpose of the Legislature should not be ascertained from any single, isolated clause or sentence or from particular or partial recitals, by from a general consideration or viewpoint of the act as a whole. Taylor v. State, 377 P.2d 508, 510-11
(Okla.Crim.App. 1962).
¶ 16 All of the statutory provisions in the SWMA relating to the location of scales when read together indicate a legislative intent to require the scales to be located at the landfill disposal site and no contrary intention is evident. There is no language in the statute which indicates an intention to allow the scales to placed at any other location nor is there any indication that the Department is given the discretion to determine where the scales should be located on a case by case basis. Further, the Legislature defined the only option available to owners and operators to estimate waste volumes when the scale "at the disposal site" is inoperative and did not create any other methods of estimation.
¶ 17 Considering the legislative expressions of intent to require placement of the scales at the landfill disposal site in conjunction with the absence of any contradictory statements or grant of administrative discretion, the statute must be construed to require owners and operators to install and utilize scales at the landfill disposal site without exception. Because the statute requires such placement, the Department is not authorized to allow an owner or operator to use off-site scales or to place scales at a location removed from the landfill disposal site.
¶ 18 The scope of what is included within a disposal site is defined by Section 2-10-103(3) of Title 27A of the Oklahoma Statutes. Under Section 2-10-103(3), a disposal site is broadly defined as:
 "[A]ny place, including a transfer station, or any other place at which solid waste is dumped, abandoned, or accepted or disposed of by incineration, land filling, composting, shredding, compaction, baling or any other method or by processing by pyrolysis, resource recovery or any other method, technique or process designed to change the physical, chemical or biological character or composition of any solid waste so as to render such waste safe or nonhazardous, amenable to transport, recovery or storage or reduced in volume. A disposal site shall not include a manufacturing facility which processes scrap materials which have been separated for collection and processing as industrial raw materials[.]
27A O.S. Supp. 1996, § 2-10-103[27A-2-10-103](3).
¶ 19 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. The Department of Environmental Quality rules, embodied inOAC 252:510-21-6(1) and OAC 252:520-23-51(1), creating the trustfund mechanism for providing closure and postclosure financialassurance for solid waste landfills, violate 27A O.S. Supp.1996, § 2-10-701(B) (D) which require that a sufficientamount of assurance remain in effect until completion of theclosure and postclosure phases.
2. The Department of Environmental Quality's practice ofpermitting the use of off-site scales at landfills violates 27AO.S. Supp. 1996, § 2-10-802(A)(1) which requires that allowners and operators of landfill disposal sites install scales byJanuary 1, 1996. The Department may only permit owners ofdisposal sites to install scales at locations which meet thedefinition of a disposal site under 27A O.S. Supp. 1996, §2-10-103(3).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
KELLY S. HUNTER ASSISTANT ATTORNEY GENERAL