2008 OK CIV APP 14

Lisa K. JONES, as Administratrix of the Estate of Michael W. Jones, Deceased; Lisa K. Jones, individually; Lisa K. Jones, as parent and next friend to Steven Jones, a minor, Amanda Jones, a minor, and Michelle Jones, a minor, Plaintiffs/Appellants,

v.

INTEGRIS BAPTIST MEDICAL CENTER, an Oklahoma Not For Profit Corporation; Jay P. Cannon, M.D., individually; Jay P. Cannon, M.D., P.C., an Oklahoma For Profit Corporation, Defendants/Appellees.

John Does 1–5, individuals; and Jane Does 1–5, individuals, Defendants.

No. 103,640.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 10, 2008.

Richard D. Marrs, E. Diane Hinkle, The Richardson Law Firm, Tulsa, OK, for Appellants.

Glen D. Huff, Susan A. Short, Oklahoma City, OK, for Appellee Integris Baptist Medical Center.

Russell L. Hendrickson, Amy Steele, Andrea D.W. Moates, Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, OK, for Appellees Jay P. Cannon, M.D., individually, and Jay P. Cannon, M.D., P.C.

LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant Lisa K. Jones, individually, as Administratrix of the Estate of Michael W. Jones, Deceased, and as parent and next friend to the minor children, Steven Jones, Amanda Jones, and Michelle Jones (individually, by name, or collectively, Plaintiffs) seeks review of the trial court's order granting the motions to dismiss of Defendants/Appellees Integris Baptist Medical Center, an Oklahoma Not For Profit Corporation, Jay P. Cannon, M.D., individually, and Jay P. Cannon, M.D., P.C., an Oklahoma For Profit Corporation (individually, by name, or collectively, Defendants), on Plaintiffs' claims to recover damages for the wrongful death of her husband and the children's father, Michael W. Jones. In this appeal, Plaintiffs complain the trial court erred as a matter of law (1) in its application of 12 O.S. Supp.2003 § 150, an unconstitutional special law barring access to the courts and denying them equal protection and due process, and (2) in its misapplication of the Oklahoma savings statute, 12 O.S. § 100.

¶ 2 Decedent died December 13, 2002. Plaintiffs commenced an action against Defendants in the District Court of Oklahoma County on August 21, 2003, seeking damages for negligence and the wrongful death of Decedent. On March 28, 2005, the trial court filed its order dismissing the action without prejudice for failure "to issue summons or file a waiver within ninety (90) days of the date of filing of the petition or alias summons was not issued within thirty (30) days after the return of the summons not served as required by Rule 9(a)," Rules for District Courts of Oklahoma, 12 O.S., Ch. 2, App.[1]

¶ 3 On November 17, 2005, Plaintiffs (now represented by different counsel) commenced the instant action. On December 13, 2005, Defendants filed their answers.

¶ 4 On January 9, 2006, Defendants Cannon filed a motion to dismiss. In support, Cannon asserted that, because Plaintiffs failed to serve summons within one hundred eighty days (180) after filing of the initial suit on August 21, 2003, Plaintiffs' initial suit was then "deemed dismissed without prejudice" by operation of 12 O.S. § 150,[2] and that Plaintiffs did not timely commence the instant action within one year of the § 150 "deemed" dismissal as to enjoy the protection of the Oklahoma savings statute, 12 O.S. § 100. On January 17, 2006, Defendant Hospital filed a motion to dismiss on the same grounds.

¶ 5 Plaintiffs responded, arguing that the mandatory "deemed dismissed" language of § 150 irreconcilably conflicted with the permissive dismissal provisions of 12 O.S. § 2004(I) which allowed more than one-hundred-eighty (180) days to obtain issuance and service of summons, and denied them of due process. Plaintiffs also argued that the trial court possessed the jurisdictional authority to enter the Rule 9 dismissal in March 2005. So, said Plaintiffs, and notwithstanding the provisions of § 150, because they commenced the instant action within one year of the filing of the trial court's Rule 9 order in

---

1. "In any case in which summons is not issued or waiver filed within ninety (90) days after the filing of the petition, or alias summons is not issued within thirty (30) days after return of the summons not served, the action may be dismissed by the court without notice to the plaintiff."

2. "In any medical liability action, a summons shall be served on the defendant, or defendants, within one hundred eighty (180) days of the filing of the lawsuit or the case shall be deemed dismissed without prejudice."

March 2005, § 100 applied as to render this case timely filed.

¶ 6 On consideration of the parties' arguments, the trial court agreed with Defendants, and dismissed Plaintiffs' action with prejudice. Plaintiffs appeal.

¶ 7 In their first proposition, Plaintiffs assert the trial court erred as a matter of law in holding their first lawsuit was dismissed in February 2004 by operation of § 150, and that the instant suit was not timely commenced within one year as required by § 100. In their second proposition, Plaintiffs challenge the validity of § 150 as an unconstitutional and impermissible special law, denying them access to the courts, equal protection and due process of law. U.S. Const., Am. I, XIV; Okl. Const., art. II, § 6, art. V, § 46; *Zeier v. Zimmer, Inc.*, 2006 OK 98, 152 P.3d 861.

¶ 8 Defendants object to consideration of Plaintiffs' constitutional challenges because they failed to raise the constitutional challenges in the trial court. Indeed, the failure to raise a constitutional issue in the trial court is ordinarily fatal to consideration of the issue on appeal. *See, e.g., Jernigan v. Jernigan*, 2006 OK 22, ¶ 26, 138 P.3d 539, 548; *Johnson v. City of Woodward*, 2001 OK 85, ¶ 21, 38 P.3d 218, 226–227; *Northwest Datsun v. Oklahoma Motor Vehicle Com'n*, 1987 OK 31, ¶ 16, 736 P.2d 516, 520.

¶ 9 However, there are exceptions to this rule. For instance, "a question relating to the constitutionality of a statute may, when the public interest and welfare requires, be considered for the first time on appeal." *First Nat. Bank of Alex v. South-*

*land Production Co.*, 1941 OK 87, ¶¶ 0(4), 112 P.2d 1087.[3] *Accord, City of Enid v. Public Employees Relations Bd.*, 2006 OK 16, ¶ 21, 133 P.3d 281, 289. And, more particularly, "[w]e may review claims which relate to alleged deprivations of due process of law despite a failure to preserve error." *Patterson v. Beall*, 2000 OK 92, ¶ 1, 19 P.3d 839, 841.

¶ 10 The parties agree neither Plaintiffs nor Defendants raised any issue challenging the constitutionality of § 150 as an impermissible special law in the trial court. However, Plaintiffs did in fact complain that § 150 infringed upon their right of due process, and the same analysis applies on review of special law, equal protection and due process complaints. *See, e.g., Texas Oklahoma Exp. v. Sorenson*, 1982 OK 113, ¶ 12, 652 P.2d 285, 289–290.[4] Because we may review due process complaints despite a failure to preserve error below, because we analyze special law and due process complaints under the same standard, and because, in our view, the special law and due process complaints are so inextricably intertwined, we find the constitutionality of § 150 ripe for appellate review in the present case.

¶ 11 In *Zeier*, the defendant doctor in plaintiff's medical negligence action alleged plaintiff's failure to obtain and provide an expert's affidavit of merit as required by 63 O.S. Supp.2003 § 1–1708.1E, subjecting plaintiff's case to dismissal. 2006 OK 98, ¶ 3, 152 P.3d at 864. Plaintiff objected, complaining, inter alia, "that the affidavit requirement of ... § 1–1708.1E constituted an unconstitutional special law under the Oklahoma Constitution art. 5, §§ 46 and 59 and that it

3. In so holding, the Oklahoma Supreme Court observed:
     ... The wisdom of this exemption is, we think, self-evident, for the rule itself is one of practice and designed to limit the scope of inquiry on appeal strictly to the controversy as it was presented to the lower tribunal. It is fair to the parties, however, when the question is of such a nature that the present welfare of the people at large, or a substantial portion thereof, is involved that the consideration of their rights merits a departure from the general rule and authorizes the court in its discretion to direct its attention to the general welfare, rather than the interests of the parties to the immediate cause.

*First Nat. Bank of Alex*, 1941 OK 87, ¶ 67, 112 P.2d at 1098–99.

4. "In testing the validity of a state statute which differentiates in its treatment of one group of individuals compared with its treatment of another group as against the constitutional prohibition against taking property without due process of law, against denial of equal protection of the laws, and against the enactment of special as distinguished from general laws, a common test is applied, i.e., whether the classification which forms the basis for the differentiation is neither arbitrary nor capricious, and bears a reasonable relation to the object to be accomplished."

violated the constitutional guarantee of access to the courts contained in art. 2, § 6 of the Oklahoma Constitution and the Fourteenth Amendment to the United States Constitution." *Id.* The trial court agreed with defendant, and "entered a final order of dismissal without prejudice." *Zeier,* 2006 OK 98, ¶ 4, 152 P.3d at 864.

¶ 12 On plaintiff's appeal, the Supreme Court first observed:

> The terms of art. 5, § 46 command that court procedure be symmetrical and apply equally across the board for an entire class of similarly situated persons or things. **In a special laws attack under art. 5, § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things.** The test is whether the provision fits into the structured regime of established procedure as part of a symmetrical whole. If an enactment injects asymmetry, the § 46 interdiction of special law has been offended.

*Zeier,* 2006 OK 98, ¶ 13, 152 P.3d at 867. (Footnotes omitted.) (Emphasis original.) The Supreme Court then recognized three groups of tort claimants affected by the affidavit of merit provision in § 1–1708.1E:

> The affidavit of merit requirement immediately divides tort victims alleging negligence into two classes—those who pursue a cause of action in negligence generally and those who name medical professionals as defendants.... Plaintiffs alleging anything other than medical negligence need only file a petition giving fair notice of the plaintiff's claim and the grounds upon which it rests. These claimants have no affidavit requirement and may commence a cause of action with the filing of a petition, while those alleging medical malpractice must obtain a professional opinion that their cause is meritorious as a prerequisite to pursuing suit or be subject to dismissal.
>
> Not only does 63 O.S. Supp.2003 § 1–1708.1E divide tort victims on the basis of whether the victim is pursuing a general negligence claim or whether medical malpractice damage is alleged, it also necessi-

tates the recognition of a subset of medical malpractice claimants relying on the legislatively codified doctrine of *res ipsa loquitor* for medical malpractice cases. This is a doctrine we may not presume the Legislature intended to repeal by implication in passing 63 O.S. Supp.2003 § 1–1708.1E.

> The nature of a *res ipsa loquitor* claim often negates the necessity of expert testimony to prove the cause. Therefore, if 63 O.S. Supp.2003 § 1–1708.1E is inapplicable to such claims—which may be brought against physicians and hospitals, a third subsection of the whole of negligence plaintiffs is severed. With the enactment of the affidavit of merit statute, courts are required to classify three sets of negligence plaintiffs: (1) general negligence plaintiffs—not required to file an affidavit of merit; (2) medical malpractice plaintiffs to which the affidavit requirement of 63 O.S. Supp.2003 § 1–1708.1E applies; and (3) a third class comprised of medical malpractice plaintiffs who may not be subject to 63 O.S. Supp.2003 § 1–1708.1E because, generally, no professional opinion is required for recovery under *res ipsa loquitor.*

*Zeier,* 2006 OK 98, ¶¶ 14–16, 152 P.3d at 867–868. (Footnotes omitted.) (Emphasis original.) Having so recognized, the Supreme Court concluded and held that § 1–1708.1E violated the special law proscription of art. 5, § 46:

> A statute is a "special law" where a part of an entire class of similarly affected persons is separated for different treatment.... [Section] 1–1708.1E ... sets aside a subset of negligence plaintiffs for different procedural and evidentiary treatment based on the type of action they pursue. The professional affidavit requirement of 63 O.S. Supp.2003 § 1–1708.1E has no counterpart in the general law of tort claims. Only medical malpractice claimants are burdened with the necessity of obtaining a medical opinion to support the filing of a petition in the district court. Furthermore, only medical malpractice defendants, not negligence defendants generally, are granted what is a mandated discovery privilege before a petition for recovery will ever be heard—

although the statute prohibits the admitting of the expert's opinion at trial or its use in discovery, it allows the defendant to obtain a copy of the same. This is precisely the vice that the Oklahoma Constitution and this Court have long guarded against—the granting of preference to some and the denial of equality to a class.

By mandating uniformity of procedure, the terms of art. 5, § 46 command that all citizens of the state shall have equal access to legal institutions for application of the general ordinary forensic process. Medical malpractice plaintiffs constitute nothing more than a subset of parties pursuing a cause under negligence standards. Because 63 O.S. Supp.2003 § 1–1708.1E impacts less than an entire class of similarly situated claimants—medical malpractice claimants are severed from all tort victims with the possibility of the creation of a third class if the doctrine of *res ipsa loquitor* applies, the statute is underinclusive and special. We determine that the statute violates the absolute and unequivocal prohibition of the Oklahoma Constitution art. 5, § 46 against the passing of special laws regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts.

*Zeier,* 2006 OK 98, ¶¶ 17–18, 152 P.3d at 868–869. (Footnotes omitted.) (Emphasis original.) It seems to us this same analysis should apply, regardless of how the issue is framed, whether as a special law, equal protection or due process challenge.

■ ¶ 13 First, and like § 1–1708.1E, it is clear that § 150 "sets aside a subset of negligence plaintiffs for different procedural . . . treatment based on the type of action they pursue." *Zeier,* 2006 OK 98, ¶ 17, 152 P.3d at 868. That is to say, § 2004(I) of title 12, O.S. Supp.2002, provides:

> If service of process is not made upon a defendant within one hundred eighty (180) days after the filing of the petition and the plaintiff cannot show good cause why such service was not made within that period, the action may be dismissed as to that defendant without prejudice upon the court's own initiative *with notice to the plaintiff or upon motion.* . . . This subsection shall not apply with respect to a defendant who has been outside of this state for one hundred eighty (180) days following the filing of the petition.

(Emphasis added.) The unequivocal language of § 2004(I) thus permits dismissal of an action if an *ordinary* plaintiff fails to obtain service of summons within one-hundred-eighty (180) days of issuance, but requires notice to an *ordinary* plaintiff of such impending doom, either by the court or by the movant on a motion to dismiss. *See also,* 12 O.S. § 2005(A);[5] Rule 4(d), Rules for District Courts of Oklahoma, 12 O.S., Ch. 2, App.[6] With its "deemed dismissed" provision, however, § 150 affords the *medical negligence plaintiff* no such notice prior to dismissal, and prior notice of proceedings affecting one's rights sits at the core of due process protections. *See, e.g., Booth v. McKnight,* 2003 OK 49, ¶¶ 20–21, 70 P.3d 855, 862–863.[7]

5. "Except as otherwise provided in this title, every order required by its terms to be served, every pleading subsequent to the original petition unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party or any other person unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties. . . ."

6. "If the motion does not comply with the requirements of [Rule 4] b and c . . ., the motion may be denied without a hearing, and if a responsive pleading is required, the moving party shall serve any pertinent responsive pleading within twenty (20) days after notice of the court's action. Motions not requiring briefs shall state whether opposing parties agree or object to the request and shall be accompanied by a proposed order granting the relief requested. If there are no opposing parties, or if they cannot be reached, the movant shall so state with particularity. The proposed order shall be served together with the motion upon all parties in the matter. Objections to motions not requiring briefs shall be served and filed within fifteen (15) days after service of the motion or the motion may be deemed confessed."

7. "Notice is a sine qua non element of personal jurisdiction, without which the court wields no authority over the persons sought to be haled before it. The classic statement of constitutional-

¶ 14 Second, upon failure to obtain service within 180 days, § 2004(I) affords an *ordinary* plaintiff an opportunity to avoid the trial court's *discretionary* power to dismiss by showing "good cause why such service was not made within that period." Section 150, however, affords a *medical negligence* plaintiff no such opportunity to explain the failure of service.

¶ 15 Third, dismissal of an *ordinary* plaintiff's claim is not *mandated* by the plain language of § 2004(I) unless or until three conditions are met: (1) the trial "court quashes a summons or its service," *and* (2) "a new summons [is permitted to] be served on the defendant within a time specified by the" trial court, *and* (3) "the new summons is not served within the specified time," in which case, an *ordinary* plaintiff's "action *shall* be deemed to have been dismissed without prejudice as to that defendant" not served. (Emphasis added.) Again, however, § 150 does not afford a *medical negligence* plaintiff the same opportunities, upon failure to obtain service of summons within 180 days, either to explain the failure of service within that period, or to obtain service of a new summons "within a time specified by the" trial court before facing *mandatory* dismissal.

¶ 16 Finally, and by its own specific terms, an *ordinary* plaintiff's action may not be dismissed for failure of service of process under § 2004(I) because "this subsection shall not apply with respect to a defendant who has been outside of this state for one hundred eighty (180) days following the filing of the petition." On the other hand, the action of a *medical negligence* plaintiff is "deemed dismissed" under § 150 *without* respect to the defendant's presence or absence from the state during the 180–day period after filing of the petition.

¶ 17 Section 150 holds medical negligence plaintiffs to different and stricter standards than any other plaintiffs, and denies to medical negligence plaintiffs prior notice of proceedings potentially affecting their rights, a violation of fundamental due process. The 180–day "deemed dismissed" provision of § 150 may not therefore be invoked to trigger running of the § 100 one year period for refiling of Plaintiffs' action. Plaintiffs commenced this action within one year of the March 2005 filing of the trial court's order of dismissal, timely under § 100.

¶ 18 The order of the trial court is therefore REVERSED and the cause REMANDED for further proceedings.

MITCHELL, V.C.J., concurs; and ADAMS, J., concurs by reason of stare decisis.

ly adequate notice is that which is reasonably calculated, under the circumstances, to inform interested persons of the pending litigation and to afford them an opportunity to advocate their interest in the cause. Notice that satisfies due process performs two functions. It not only informs interested persons that litigation is pending (in the sense of telling them that it exists and informing them of time and place where the forensic battle will be waged), but also affords them an opportunity to present a defense against the adversary's claim. At the bare minimum, a constitutionally adequate notice must apprise one of the antagonist's pressed demands and of the result consequent upon default"; "In order to accomplish that task, notice must provide one with more than the naked logistics of the hearing. For intelligently framing one's defense a person must know what issues one will be confronted with. In deciding whether to appear at the hearing to defend against issues presented for resolution or default and suffer the consequences, one must at every critical stage of the proceedings be provided with (1) notice at a meaningful time and in a meaningful manner, (2) a realistic opportunity to appear and be heard, and (3) the opportunity meaningfully to participate in the proceedings."