**PHOENIX INS. CO., HARTFORD, CONN.,**
v.
**DIFFIE.**
No. 35955.

Supreme Court of Oklahoma.
May 11, 1954.

Rittenhouse, Hanson & Green, Oklahoma City, for plaintiff in error.

F. C. Swindell, A. D. Mason, Tulsa, for defendant in error.

WELCH, Justice.

This is an action by A. J. Diffie against Phoenix Insurance Company, Hartford, Connecticut, to recover on an automobile insurance policy for injuries sustained to his automobile as the result of a collision. The policy indemnified plaintiff against accidental loss sustained to his automobile resulting from collision.

The case was tried to a jury resulting in a verdict in favor of plaintiff in the sum of $3,716.95, with interest from August 15, 1948. Judgment was entered on the verdict accordingly. Defendant appeals.

Its contention is that the amount of damages awarded plaintiff is excessive. The main contention between the parties seems to be as to whether the damaged car could be repaired. It is defendant's contention that it was repairable and that the measure of damages to plaintiff was therefore the cost of repair, while plaintiff contends that the automobile could not be repaired but was a total loss. The policy provides:

"The company may pay for the loss in money or may repair or replace the automobile or such parts thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company."

The evidence in substance discloses the following facts: On August 15, 1948, plaintiff was the owner of a Cadillac automobile which was insured by defendant against damage caused by collision or upset, and on that date plaintiff, while driving the automobile, collided with a vehicle driven by another, and plaintiff's automobile was damaged and plaintiff sustained severe personal injuries rendering him unconscious; that he remained in an unconscious state for a considerable period of time and was not able to look after his business. Personal injury damage is not claimed in this action.

The collision occurred near the town of Crosbyton, Texas. Plaintiff was at that time, and is now, residing in the City of Tulsa, Oklahoma. Shortly after the accident occurred the automobile was placed in a brick garage in the town of Crosbyton, Texas.

Daisy Diffie, wife of plaintiff, who it is conceded was then acting as agent of plaintiff, testified she was notified of the accident on Sunday, the evening of August 15th. She immediately left for Crosbyton, Texas. She arrived there the next morning about 9:30. Before she left, however, she notified the agent at Tulsa, who sold plaintiff the policy, of the accident. On the day she arrived at Crosbyton she received a telephone call from the agent at Tulsa notifying her that notice of loss had been given to the proper authorities, and that an agent would call upon her to discuss the question of loss in a few days.

J. C. Crouch, Insurance Adjustor, called upon her the following Wednesday, and they both went to the garage where the car was stored and examined it. Mr. Crouch then stated he did not think the automobile could be repaired, but he would make further investigation and let her know. Thereafter, on different occasions, he re-

turned to Crosbyton, the last occasion being the early part of September, 1948. At that time the question of loss was further taken up between them. Mr. Crouch, the Adjustor, at that time told her the automobile could not be repaired, that numerous new parts would be necessary to repair it and such parts were not available; that he made inquiry at Dallas, Texas, Chicago, Illinois, and at the factory and other places relative to obtaining the parts, and at none of the places were such parts available. Since that time she has not seen or discussed the matter with the Adjustor.

During this period of time her husband was in the hospital unconscious and remained unconscious for a period of four weeks, when he was then removed to the City of Tulsa and placed in a hospital there and remained in the hospital for about three weeks thereafter.

Plaintiff, in substance, testified that after he left the hospital at Tulsa, and when he was able to transact business, which was in the early part of June, 1949, he went to Crosbyton, Texas, to get possession of the automobile. When he arrived he was informed by the proprietor of the garage that the automobile had been removed by the insurance company to Lubbock, Texas. He then went to Lubbock and discovered that the automobile had been stored with the City Body Works at Lubbock. It was in the salvage yard and was in the back of the yard in a junk heap in the corner of the yard outside the building; that he did not authorize the insurance company to remove the automobile from Crosbyton to Lubbock, and that he had no knowledge that it had been removed until he discovered it there.

He examined the automobile, it was mashed together like an accordian; the whole left side was mashed in, the seats were all buckled up, the whole left side of the body and the motor were demolished. He thereafter called upon Mr. Nelson, one of the Adjustors for the General Adjustment Company, who informed him that he represented the Phoenix Insurance Company, and he talked to him about the automobile and approached him for a settlement with the insurance company, and asked him why he had not been out to try to make an adjustment, fix up the automobile, or pay him, and he then made an appointment with him for the following day, and he was then informed by the Adjustor that there were several things that could be done to adjust the loss, either fix up the automobile and give it back to him in good shape, or pay him for it. He then informed the Adjustor that he had been trying to get the necessary parts to repair it for some time. He tried at Dallas, and other points, and was informed that the parts were not available and that the automobile could not be repaired if the parts could not be obtained. Several offers were then made by the Adjustor to effect a settlement, but no offer was made acceptable to plaintiff. Plaintiff further testified that the automobile immediately before the wreck was worth from $4,300 to $4,500; that he knew the value of the automobile; that he had bought and sold many like automobiles; that he had been engaged in the automobile sales business for several years prior to the time he sustained his accident; that he had been dealing in Cadillac automobiles; that the automobile in question had been driven about 30,000 miles, was a little more than a year old and was in good running condition and had never been in a previous wreck.

Another witness, who had been engaged in selling Cadillac cars, but who had not seen the automobile prior to the accident, in answer to a hypothetical question based on the number of miles the automobile had been driven, its age and upon the fact that it was in good running condition at the time of the accident as testified to by plaintiff, fixed its value at $4,500.

Mr. Crouch testified that he was an insurance adjustor connected with the General Adjustment Bureau at Lubbock, Texas, and was assigned to adjust the loss of the automobile in question. He saw and examined the automobile in the garage at Crosbyton, Texas, and talked with Mrs. Diffie, wife of plaintiff, relative to the adjustment of the loss. Thereafter, in an effort to adjust the loss, he obtained bids as to the salvage value of the automobile from different parties. He obtained bids ranging

from $700 to $1,200. He also obtained an estimate of the costs of repairing the automobile. This estimate fixed the cost of repair at $1,897.46. He did not, however, transmit this estimate and salvage bids to plaintiff. He transmitted them to the General Adjustment Bureau office at Tulsa, Oklahoma. He did not deny that he had a conversation with Mrs. Diffie relative to the repair of the automobile as testified to by her.

Carroll Pendley testified he was a mechanic in the employ of the City Body Works at Lubbock, Texas; that in his opinion the automobile could have been repaired and restored to its former condition; that he made the estimate furnished the Adjustor for repair of the automobile and that he would have repaired the automobile for the sum of $1,897.46, the amount stated in the estimate, and would have guaranteed the job.

He further testified that he was not directed by any one to repair the automobile. He entered into no agreement to do so, and that he would not have entered into an agreement to repair the automobile unless it had been reduced to writing and signed by both parties.

J. M. Cunningham testified that he moved the automobile from the garage in which it was stored at Crosbyton, Texas, to the City Body Works at Lubbock, Texas, and stored it there; that he did so without the consent of plaintiff. He saw and talked with plaintiff several times thereafter relative to the damage of the automobile and the disposition to be made thereof. In the fall of 1950 plaintiff came to Lubbock with a wrecker with the intent of moving the automobile to Tulsa, Oklahoma. He then presented him with a towing and storage bill, but plaintiff refused to pay the bill and witness refused to deliver the automobile to him. He thereafter advertised and sold the automobile for towing and storage charges. Neither the amount of towing and storage bill, nor the person to whom the automobile was sold, nor the price for which it was sold, nor the date of the sale is shown by the record.

Defendant in its answer alleges, however, that the automobile was repairable and that plaintiff's measure of recovery is therefore the cost of repair, and alleges such cost plus towing and storage charges to be $2,034, which amount it tendered plaintiff in its answer.

The evidence offered by defendant shows the estimated cost of repairs to be $1,897.46. The towing and storage charges therefore must have been $136.54.

It is the contention of defendant that the only competent evidence offered on the question as to whether the automobile was capable of being repaired and restored to its former condition consists of the evidence offered by it, which conclusively shows that the automobile was repairable and that plaintiff's measure of recovery is therefore the reasonable cost of repair, and requested the court to so instruct the jury. The request was denied, and we think properly so.

The evidence offered by plaintiff above detailed was sufficient to take the case to the jury on the question as to whether the automobile was repairable. The jury, by its verdict, evidently found such issue in favor of plaintiff. Therefore, unless the collision resulted in a total loss of the automobile plaintiff's measure of recovery was the difference between the fair market value of his automobile in the condition in which it was immediately prior to the collision and its value thereafter. If the collision resulted in a total loss of the automobile his measure of recovery was the fair market value thereof in the condition in which it was immediately before the collision. Marland Refining Co. v. Duffy, 94 Okl. 16, 220 P. 846, 35 A.L.R. 52; Carnes v. Ditzenberger, 163 Okl. 146, 21 P.2d 756; Anderson v. Lovelace, 203 Okl. 549, 223 P.2d 1085.

The evidence offered by plaintiff shows the value of the automobile immediately prior to the collision to be about $4,500. Plaintiff offered no evidence tending to establish its value immediately thereafter. However, the evidence offered by defendant tends to show that it had a salvage value ranging from $700 to $1,200, which establishes the collision did not result in a complete loss of the automobile.

Plaintiff, however contends that the acts and conduct of defendant in moving the automobile from Crosbyton to Lubbock, Texas, and placing it in storage without his knowledge or consent, and in permitting it to be sold for towing and storage charges deprived him of the benefit of the salvage value thereof, and his measure of recovery is therefore the fair market value of the automobile in the condition in which it was immediately prior to the collision.

The trial court took this view of the case and in its instruction No. 10, after instructing the jury that if the automobile was repairable, plaintiff's measure of recovery would be the cost of repair; that if it was not repairable plaintiff's measure of recovery would be the difference between the fair cash value of the automobile in the condition it was immediately prior to the collision, and its value thereafter, further instructed:

"However, you are instructed that if you find by a preponderance of the evidence that plaintiff was prevented from repairing the automobile by the acts of defendant insurance company in taking possession and moving the automobile from Crosbyton, Texas, to Lubbock, Texas, and if you further find that said acts of the insurance company caused a loss to plaintiff of the salvage value of the automobile, then you are instructed that the measure of damages would be the actual cash value of the automobile at the time of its loss without deducting any salvage value, and in no event should your verdict be for more than $3716.95, the amount sued for with interest at 6% from the 15th day of August, 1948."

In Instruction No. 6 the jury is told:

"You are instructed that under the terms and conditions of the policy of insurance sued upon the plaintiff was under a duty to protect the property from further loss after the accident and the policy of insurance gives him no right to abandon the automobile to the insurance company. In fixing the amount of plaintiff's loss, therefore, you shall not take into consideration any loss sustained by the failure of the plaintiff to protect the property after the accident, including his failure to prevent the sale of the same for storage charges, and your determination of plaintiff's loss shall be made in accordance with Instruction No. 10.

"However, you are instructed further that if you find by a preponderance that plaintiff was prevented from protecting the property by the acts of defendant in taking possession of the automobile at Crosbyton, Texas, and moving the same to Lubbock, Texas, then you may consider plaintiff's loss occasioned by the sale of the automobile for storage charges."

Defendant assigns as error the giving of these instructions. It is not, however, contended that the instructions are erroneous as abstract propositions of law. It is urged that the court committed error in giving these instructions for the reason that they were not within the issues raised by the pleadings in the case. We do not agree. Defendant in its answer pleads:

"Further answering and for further defense, this defendant alleges and states that the plaintiff failed to comply with the terms and provisions of the policy of insurance herein sued upon relative to the duty and obligation of the plaintiff to preserve and protect the property after loss and that any depreciation which said automobile sustained following the loss by reason of lapse of time, exposure to the weather, or any other cause due and owing to the negligence of plaintiff in failing to protect said automobile."

Plaintiff in his reply alleges after the collision occurred and the automobile was stored in a garage in Crosbyton, Texas, defendant took possession thereof and has retained possession ever since.

■ We think the pleadings sufficient to authorize the giving of the challenged instructions. Moreover, defendant itself offered evidence to the effect that its insurance adjustor without the knowledge or consent of plaintiff or his agent moved the automobile from Crosbyton, Texas, to Lub-

bock, Texas, and stored it there, and that it was thereafter sold for towing and storage charges. It may not therefore be heard to say that the instructions complained of were not within the issues raised by the pleadings in the case.

Defendant, however, in its brief argues that there has been no evidence offered on which to base the challenged instructions or to establish that plaintiff was by any act on its part prevented from protecting the automobile from further damage or from repairing it or from disposing of it as salvage. This contention is not supported by the record. The policy provides:

"When loss occurs, the insured shall:
"(a) protect the automobile, whether or not the loss is covered by this policy, and any further loss due to the insured's failure to protect shall not be recoverable under this policy; reasonable expense incurred in affording such protection shall be deemed incurred at the company's request;"

The evidence offered by plaintiff heretofore discussed established that plaintiff has complied with this provision of the policy. It is established that soon after the collision occurred the automobile was placed in a brick garage at Crosbyton, Texas, with the consent of Mrs. Diffie, agent of plaintiff; that it was moved from that place by defendant and stored in the salvage yard at Lubbock, Texas, without the knowledge or consent of plaintiff or his agent.

The evidence is not altogether clear as to the purpose for which it was there stored. It is, however, quite clear that it was not stored there for the purpose of repairing it. It is true defendant did obtain an estimate of the cost of repair, but, although the automobile remained there from late in September, 1948, until early in the fall of 1950, defendant did not repair it or make any effort to repair it, but, on the contrary, elected in lieu of repairing the automobile to pay in money the cost of repair. Having so elected, we think it was its duty to release the automobile and return it to plaintiff. This it failed to do and by such acts and conduct

prevented plaintiff obtaining possession thereof for the purpose of repairing it or disposing of it as salvage without paying storage charges.

■ The automobile was not stored in the salvage yard at Lubbock, Texas, by plaintiff, the owner thereof, or by his agent or any person authorized by him. He was therefore not liable for storage charges. It was stored there by defendant without authority from plaintiff and it alone was therefore liable for such charges, and its storage there by defendant, under the evidence and circumstances in this case, did not create a lien against it for such charges. Williamson v. Winningham, 199 Okl. 393, 186 P.2d 644; Holland v. Whiteside, 171 Okl. 397, 43 P.2d 57.

■ Defendant in its answer in effect concedes that it was liable for storage charges, and we think under the terms of the policy above mentioned, it was bound to pay such charges. This it failed to do, but permitted the automobile to be sold to pay such charges, thereby depriving plaintiff of the benefit of its salvage value. The evidence is sufficient upon which to base the instructions.

■ Defendant also assigns as error the admission of incompetent evidence. It appears that plaintiff, after testifying to the value of the automobile immediately prior to the collision, fixed its value at about $4,500. He thereafter was permitted to testify over the objection of defendant that several days prior to the collision he was offered $4,500 for the automobile. Defendant's objection to this evidence in our opinion should have been sustained. However, plaintiff did not base his opinion on this offer alone. He based his opinion primarily upon his knowledge and experience of the value of automobiles such as the one in question. Plaintiff in this respect was corroborated by another witness. Defendant offered no evidence as to the value of the automobile. In these circumstances we fail to see how defendant could in any manner have been prejudiced by the admission of this evidence. The error, if any, in its admission is therefore harmless.

██ It is finally contended by defendant that the court erred in allowing interest on the amount found due from August 15, 1948. It is asserted that interest should not have been allowed until the amount due was ascertained and fixed by judgment and interest should only have been allowed from that date. We have held to the contrary in Fidelity-Phenix Fire Ins. Co. v. Board of Education of Town of Rosedale, 201 Okl. 250, 204 P.2d 982, 983. In that case we held:

"Under Tit. 23 O.S.1941 § 22, interest on the principal amount due on an insurance policy is recoverable from the time the policy becomes due and payable under its terms."

We conclude that the evidence is sufficient to support the verdict and judgment rendered thereon, and that no prejudicial errors of law occurred during the trial.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.