**In re Arthur Douglass FOSTER, Bankrupt.**

**Warren L. McCONNICO, Trustee in Bankruptcy, Plaintiff-Appellee,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, a corporation, Defendant-Appellant.**

**No. 54589.**

Supreme Court of Oklahoma.

March 11, 1980.

Warren L. McConnico, Tulsa, for plaintiff-appellee.

Prichard, Norman, Reed & Wohlgemuth by Timothy J. Sullivan, Tulsa, for defendant-appellant.

HODGES, Justice.

On July 12, 1974, Arthur D. Foster and his wife Joan E. Foster, New York residents, entered into a conditional sales contract for the purchase of a 1974 Chevrolet pickup truck from Palmyra Motors, Inc., in Palmyra, New York. Under the terms of the contract, Palmyra Motors retained a security interest in the truck. The contract was assigned by Palmyra Motors to General Motors Acceptance Corporation [GMAC]. In order to perfect its security interest, GMAC obtained a certificate of title from the New York State Department of Motor Vehicles with GMAC's lien noted thereon. Delivery of an application for a certificate of title and payment of the required fees to the Commissioner of the Department of Motor Vehicles, followed by the Commissioner's issuance of a title certificate bearing the lienholder's name and address is the exclusive method for perfection of security interests in motor vehicles under New York law.[1] GMAC retained possession of the certificate of title.

In June of 1975, the Fosters changed their residence from New York to Ardmore, Oklahoma. Shortly afterward, Mr. Foster registered the truck in Oklahoma, and an Oklahoma certificate of title for the truck was issued in the name of Arthur D. and/or Joan E. Foster. Although the Oklahoma certificate of title contained a blank for designation of a lienholder, the certificate which was issued to the Fosters contained no reference to GMAC's security interest. The New York certificate of title was never surrendered.

Arthur Foster filed his petition in bankruptcy October 18, 1976, and was adjudged a bankrupt. The vehicle was not transferred to a third party nor was it encumbered by additional security interests prior to the

---

1. 62A N.Y.Veh. & Traf.Law §§ 2118–19, 2123 (1979).

date of bankruptcy. The bankruptcy court entered judgment for the trustee. The court ruled that GMAC's security interest was unperfected in Oklahoma and was subordinate to the rights of the trustee because GMAC had not filed a financing statement in Oklahoma within four months after the truck was removed to Oklahoma. The district court affirmed the bankruptcy court's decision and GMAC appealed.

The parties concede that the priority of interest in the truck is determined by Oklahoma law.[2]

## II

The determinative issue is which of two provisions of the Oklahoma Uniform Commercial Code, § 9–103(3) or § 9–103(4), controls the perfection of GMAC's security interest in Oklahoma. It is provided by 12A O.S.1971 § 9–103(3):

> (3) . . . If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. . . .

Title 12A O.S.1971 § 9–103(4) states:
(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

The district court and the bankruptcy judge followed the view of the Oklahoma Court of Appeals in an unreported nonprecedential decision, *Associates Discount*

*Corp. v. Reeves*, 44 Okl.B.A.J. 2559, 13 U.C.C.Rep.Service 709 (Okl.Ct.App. July 31, 1973). This case holds that when an Oklahoma certificate of title is issued for a motor vehicle subject to a foreign security interest, § 9–103(3) governs the question of whether the security interest is perfected in Oklahoma.[3]

GMAC contends that § 9–103(4) controls because the pickup truck is covered by a New York certificate of title, and that as a result New York law determines whether GMAC's security interest remains perfected in Oklahoma. GMAC argues that because GMAC's security interest is perfected in New York, the interest continues to be perfected in Oklahoma by operation of § 9–103(4), and, thus, GMAC is not required to reperfect in Oklahoma. GMAC alleges that the district court's construction of § 9–103(4) is contrary to a literal reading of that provision, and is inconsistent with the view of the majority of jurisdictions which have considered analogous disputes.

The Trustee argues that 12A O.S.1971 § 9–103(3), the four-month perfection provision, should be applied fully and literally, and that the unpublished decision of the Oklahoma Court of Appeals in *Associates Discount Corp. v. Reeves, supra*, should be given full effect.

■ The established rule in Oklahoma is that motor vehicle certificates of title in Oklahoma are documents of convenience rather than documents of ownership.[4] However, comprehensive legislation establishing a central filing system for security interests in motor vehicles in Oklahoma became effective July 1, 1979, and the new scheme is the exclusive means for perfection of security interests in motor vehicles.[5] Under the applicable Oklahoma law, at the time this problem arose, security interests in motor vehicles were not required to be indicated on Oklahoma certificates of title as a condition of perfection because, under

---

**2.** *Carroll v. Holliman*, 336 F.2d 425 (10th Cir. 1964), *cert. den.*, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965).

**3.** See also *In re Martindale*, 429 F.Supp. 131 (W.D.Okl.1976).

**4.** *Medico Leasing Co. v. Smith*, 457 P.2d 548, 551 (Okl.1969).

**5.** See 47 O.S.Supp.1979 § 23.2b.

the existing law, Oklahoma was not a "title" state. Instead, security interests in motor vehicles in Oklahoma were perfected by filing in the appropriate county.[6] Nevertheless, Oklahoma required that certificates of title be issued for all vehicles registered in the state, although applicants for Oklahoma certificates of title were not required to surrender outstanding foreign title certificates.[7]

 Where § 9–103(4) has been considered in removal of mortgaged property from a title state to a non-title state, the literal construction of the statute has been almost unanimously upheld.[8] It has been held that § 9–103(4) unequivocally removes the application of § 9–103(3) to any personal property covered by a certificate of title issued under a statute of any state which requires indication on a certificate of title of any security interest as a condition of perfection.[9] The ultimate interpretation is that one who has a security interest in an automobile, perfected in a state which requires the issuance of a certificate of title, and the listing thereon of a security interest as a condition of perfection, does not have to protect the security interest by any further action in a non-title state to which the property may thereafter be removed.[10] In this instance, the law of New York under 12A O.S.1971 § 9–103(4) controls over the provisions of 12A O.S.1971 § 9–103(3).

LAVENDER, C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

IRWIN, V. C. J., and OPALA, J., concur.

6. See 47 O.S.1971 § 23.3 and 12A O.S.1971 § 9–103; 12A O.S.1971 § 9–302.

7. See 47 O.S.1971 § 23.3.

8. The majority view was recognized by D. Kent Meyers in "Multi-State Motor Vehicle Transactions Under The Uniform Commercial Code: An Update, 30 Okl.L.Rev. 834, 858 (1977) where he stated:

. . . [When State 1 is a certificate of title state and A moves the vehicle with an appropriately noted certificate of title into a non-title or filing state, Section 9–103(4) clearly applies and continues the perfection of C–1 (Initial First Creditor) for the duration of the effectiveness of State 1's certificate. This result is

similar to the common law majority rule . . ]

See Annot., "Conflict of laws as to chattel mortgages and conditional sales of chattels," 13 A.L.R.2d 1312 (1950) for discussion.

9. *General Motors Acceptance Corp. v. Whisnant*, 387 F.2d 774 (5th Cir. 1968); *In re White*, 266 F.Supp. 863 (N.D.N.Y.1967); *In re Smith*, 311 F.Supp. 900 (W.D.Va.1970) *aff'd* 437 F.2d 898 (4 Cir.).

10. *Deposit National Bank of Mobile Co. v. Chrysler Credit Corp.*, 48 Ala.App. 161, 263 So.2d 139, 141 (1972).