2003 OK CIV APP 27

**VOLVO COMMERCIAL FINANCE LLC THE AMERICAS, successor in interest to Volvo Commercial Finance Inc. The Americas, formerly known as Volvo Truck Finance North America, Inc.,** Plaintiff/Appellant,

v.

**Charles McCLELLAN, d/b/a B & C Auto,** an individual; Harold Wiggins, an individual, deceased, and his known and unknown heirs, successors and assigns; Michael Wiggins, an individual, surviving son of Harold Wiggins; State of Oklahoma ex rel Oklahoma Tax Commission; Houdek Enterprises, Inc., a Texas corporation; and Firstar Equipment Finance Corporation, a Delaware corporation, Defendants/Appellees.

Nos. 96,105, 96,610.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 23, 2002.

John B. Heatly, Oklahoma City, OK, for Plaintiff/Appellant.

Jason D. Leonard, Carlton Dimery, Oklahoma City, OK, for Defendant/Appellee, Charles McClellan.

Douglas B. Allen, General Counsel, Alfred L. Bowman, Assistant General Counsel, Oklahoma City, OK, for Defendant/Appellee, Oklahoma Tax Commission.

Max C. Tuepker, Shawnae E. Proctor, Oklahoma City, OK, for Defendant/Appellee, Houdek Enterprises, Inc.

James Vogt, Oklahoma City, OK, for Defendant/Appellee, Firstar Equipment Finance Corporation.

## OPINION

CARL B. JONES, Judge:

¶ 1 These appeals arise from a declaratory judgment and replevin action brought by Plaintiff, Volvo Commercial Finance LLC The Americas (VCF), relating to a non-judicial foreclosure of a storage lien against a 1998 Volvo Truck/Tractor (Case No. 96,105) and an order awarding prevailing party attorney fees against VCF (Case No. 96,610).

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 On August 5, 1998, Defendant Harold Wiggins, an independent truck driver, purchased a new 1998 Volvo diesel tractor (Truck) for $97,000.00 from a truck dealer in Texas. The Truck was purchased by Harold under the terms of a Credit Sales Contract, which was assigned by the dealer to VCF. An original Texas Certificate of Title was issued October 7, 1998, showing title in Harold's name and listing VCF as the first lienholder.

¶ 3 On December 2, 1998, Harold died of sudden cardiac arrest while operating the Truck in Texas. The Truck sustained approximately $2,500.00 in damages due to the accident caused by Harold's heart attack. On December 9, 1998, Harold's son, Defendant Michael Wiggins, obtained possession of the Truck from a wrecker service in Abilene, Texas, upon payment of towing and storage charges. Michael moved the Truck to his residence in Oklahoma City, which was located next door to his father's home.

¶ 4 On December 21, 1998, Michael telephoned VCF, advised them of Harold's death and inquired about the payoff amount of Harold's loan. According to the record, Michael became very angry and irritated as a result of the conversation. On February 2, 1999, VCF sent a default notice to Harold. Because Michael collected and read Harold's mail, he became aware that VCF had begun the process of attempting to repossess the Truck. On February 16, 1999, VCF left a telephone message asking that Michael return the call.

¶ 5 At some time after February 16, 1999, Michael arranged to store the Truck at Defendant Charles McClellan's place of business in Oklahoma City. According to Michael, McClellan knew Harold owned the Truck and that he was deceased. Michael also claimed he and McClellan had an agreement that McClellan would store the Truck and attempt to collect storage charges from VCF. The agreement provided that Michael would be paid the first $1,000.00 collected from VCF and that the two would split any amounts collected above $1,000.00. The trial court specifically found that Michael arranged for storage of the Truck to prevent

VCF from repossessing it. McClellan denied any deal with Michael.

¶ 6 McClellan never prepared any invoice for storage charges and he never attempted to contact Michael, Harold or VCF asking for payment of those charges. On May 25, 1999, McClellan commenced foreclosure proceedings pursuant to 42 O.S. Supp.1992 § 91. On that date, McClellan and/or his wife prepared and signed an Oklahoma Tax Commission form entitled "Notice of Sale." The Notice referred to the VIN number on the Truck and provided for the sale of the Truck on June 7, 1999, at 12:00 p.m. at McClellan's residence. The Notice also stated the sale was to be conducted to satisfy a lien on the Truck being claimed by McClellan, d/b/a B & C Auto, in the amount of $2,505.00 for storage charges from December 10, 1998, to May 25, 1999, at the rate of $15.00 per day. The trial court determined that $15.00 per day is a reasonable rate for the storage of a vehicle. However, the court found that McClellan stored the Truck for only 98 days rather than the 167 days claimed by McClellan. Thus, the court held that McClellan's storage charges totaled only $1,470.00.

¶ 7 Also on May 25, 1999, McClellan's wife posted the "Notice of Sale" form at three public places located within Oklahoma County. The Notice of Sale was mailed to Harold, the record owner of the Truck, at his Oklahoma City residence. Michael received the notice prior to June 3, 1999. The Notice of Sale was also sent by certified mail to VCF at its address listed on the Texas Certificate of Title. Although VCF argued the Notice was delivered to the wrong address and signed for by an unauthorized person, the trial court found that delivery of the Notice was made in accordance with VCF's regular and usual custom and practice for mail delivery. Therefore, the court held that VCF was properly notified of the pending foreclosure sale.

¶ 8 On June 7, 1999, at 12:00 p.m., no third-party bidders appeared at the sale. McClellan thereafter claimed the Truck in satisfaction of his garageman's lien. On June 10, 1999, McClellan submitted the Notice of Sale and other sale documents to Defendant Oklahoma Tax Commission (OTC) and sought to obtain an Oklahoma Certificate of Title in his name. VCF contacted McClellan on June 14, 1999, and advised him of Harold's death. McClellan stated that he was in the process of obtaining title to the Truck. On June 30, 1999, the OTC issued an Oklahoma Certificate of Title showing McClellan as the owner of the Truck and listing no lienholder.

¶ 9 In July of 1999, Marvin Houdek, the owner of Defendant Houdek Enterprises, Inc., contacted McClellan after learning that the Truck was for sale. Houdek thereafter obtained the Truck's VIN number and a copy of the Title from McClellan, and learned that McClellan had obtained the Truck as a result of a foreclosed storage lien and that the prior owner had died. The Truck contained no log book or owner's manual, and had no license plates or safety inspection sticker. Upon returning to Texas, Houdek telephoned the OTC to verify that the Truck had a clear title and contacted the Volvo dealership indicated on the Truck to inquire whether there was a warranty on the Truck. Houdek also arranged for Defendant Firstar Equipment Finance Corporation to finance the purchase.

¶ 10 On July 20, 1999, McClellan sold the Truck for $72,000.00 under a lease/purchase agreement with Houdek as lessee and Firstar as owner and lessor. McClellan received $69,500.00 of the purchase price and Houdek received $2,500.00 to repair the Truck. Houdek took possession of the Truck and returned to Texas. The trial court found that at the time of the sale, neither Houdek nor Firstar had any personal knowledge of any claim by VCF or of the identity of the owner prior to McClellan. On July 21, 1999, Houdek submitted an application for a Texas Certificate of Title to the Texas Department of Transportation (TDOT). On August 7, 1999, TDOT issued a Texas Certificate of Title for the Truck showing Firstar as owner and Houdek as lessee.

¶ 11 VCF filed the instant lawsuit on July 27, 1999, against McClellan, Michael, the estate of Harold, the OTC and certain John Doe defendants. VCF later joined Houdek and Firstar in place of the John Doe defendants. In its petition, VCF asserted a claim for replevin, recovery of the sale proceeds, unjust enrichment/constructive trust as to

the sale proceeds, and declaratory judgment regarding the Truck title and priority of liens. In an amended petition, VCF added a claim contending that the foreclosure and notice provisions of 42 O.S. Supp.1992 § 91(A) and corresponding OTC Rules violated VCF's state and federal due process rights.

¶ 12 Following a non-jury trial held on February 12th through 15th, 2001, the trial court held: Michael is the sole living heir of Harold; Michael lawfully came into possession of the Truck upon Harold's death; McClellan lawfully came into possession of the Truck by virtue of Michael's request to store the Truck; McClellan stored the Truck from February 17, 1999, to May 25, 1999, during which time unpaid storage charges of $1,470.00 accrued; McClellan obtained a garageman's lien upon the Truck under § 91; McClellan complied with the requirements of § 91 in foreclosing his garageman's lien; VCF timely received the Notice of Sale and failed to diligently respond thereto; McClellan became the lawful owner of the Truck foreclosing any interest held by Harold, Michael and VCF; the OTC properly issued an Oklahoma Certificate of Title to McClellan showing no lienholder on the title; Section 91 is constitutional; Firstar and Houdek were *bona fide* purchasers for value of the Truck; Firstar is the legal owner-lessor of the Truck and Houdek is the legal lessee of the Truck, and they are entitled to possession of same; VCF failed to sustain its burden of proof on any of its claims; and McClellan is entitled to retain the proceeds of the sale of the Truck. By separate order, and after a hearing, the trial court awarded attorney fees and costs to McClellan ($39,718.34), Houdek ($37,116.10) and Firstar ($31,470.75). VCF appeals.

## II. STANDARD OF REVIEW

¶ 13 The judgment presented for review is a compilation of both findings of facts and conclusions of law. When, as here, the case is tried to the court, its determination of facts are accorded the same force as those made by a well-instructed jury. If any competent evidence supports the trial court's findings of fact, the same will be affirmed. Whether a lien is perfected under applicable statutes—i.e., whether the facts (once established) demonstrate substantial compliance with applicable statutory requirements—is largely a question of law for the trial court to resolve. Issues of law are reviewed *de novo* since an appellate court has plenary, independent and non-deferential authority to reexamine a trial court's legal rulings. *K & H Well Serv., Inc. v. Tcina, Inc.,* 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223 (footnotes omitted). The issue of entitlement to an award of attorney fees also presents a question of law subject to the *de novo* standard of review. *Elmore v. Doenges Bros. Ford, Inc.,* 2001 OK CIV APP 27, ¶ 6, 21 P.3d 65, 69.

## III. SUMMARY OF HOLDING

¶ 14 In accordance with the above standards and for the reasons set forth below, we conclude that the trial court erred in holding that (1) Michael became the lawful possessor of the Truck upon his father's death, (2) McClellan lawfully came into possession of the Truck, (3) McClellan had an enforceable lien on the truck, (4) McClellan lawfully foreclosed his lien and acquired title to the Truck, and (5) McClellan was entitled to an award of attorney fees. We affirm the trial court's ruling that Firstar and Houdek are the legal owner and lessee of the Truck, respectively, and that they are entitled to possession thereof. However, we remand the trial court's award of attorney fees to Firstar and Houdek for reconsideration consistent with this opinion.

## IV. PRIOR TO THE PURCHASE OF THE TRUCK BY FIRSTAR AND HOUDEK, VOLVO HAD THE RIGHT TO POSSESS THE TRUCK

¶ 15 The trial court's rulings with respect to McClellan were predicated upon the court's determination that Michael became the lawful possessor of the Truck upon his father's death. The court based its decision on testimony indicating Harold died intestate leaving Michael as his sole surviving heir. We note, however, that no administration of Harold's estate was ever initiated. It is within the exclusive original jurisdiction of a district court *acting in probate* to ascer-

tain whether a decedent died testate or intestate and to determine the identity of beneficiaries/heirs and the part of the estate to which each is entitled. *In re Estate of Estes,* 1999 OK 59, ¶ 21, 983 P.2d 438, 444; *Oberlander v. Eddington,* 1964 OK 98, ¶ 15, 391 P.2d 889, 893; *In re Reardon's Estate,* 1950 OK 98, ¶ 9, 219 P.2d 998, 1000–01; 58 O.S. 1991 §§ 1 and 632. In *Wilson v. Kane,* 1993 OK 65, 852 P.2d 717, the Oklahoma Supreme Court reiterated that "[p]robate is a special statutory proceeding ... 'which must be exercised *in the cases and in the manner prescribed by statute ....*' " *Id.* at ¶ 6 and n. 17, 852 P.2d at 721–2, *quoting* 58 O.S. § 1 (emphasis in original). The *Wilson* decision emphasized that "[a] probate proceeding moves along a procedural track vastly different from that followed by a regular 'action' upon a claim." *Id.* at ¶ 6, 852 P.2d at 721. The Supreme Court has also held that the sole method for judicially determining the heirs of a deceased person is through a proceeding to administer the deceased person's estate. *Pennington v. Woodner–McGaugh,* 1915 OK 1033, ¶ 3, 153 P. 875, 876. *See* also *Gassin v. McJunkin,* 1935 OK 629, ¶ 8, 48 P.2d 320, 324–5.[1] The trial court in the instant case was without authority to declare either that Harold died intestate or that Michael was Harold's sole heir. If Michael's heirship was unsettled, his right to possess the Truck could not be judicially determined.

■ ¶ 16 Appellees cite *Davis v. Morgan,* 1939 OK 468, 95 P.2d 856, *Seal v. Banes,* 1934 OK 299, 35 P.2d 704, and *DeWitt v. Cavender,* 1994 OK CIV APP 93, 878 P.2d 1077, for the proposition that title to property vests immediately in the heirs upon the death of an intestate. Appellees argue that if title to the Truck vested immediately in Michael upon Harold's death, then Michael had the right to possess the Truck. However, Appellees fail to address that prior to distribution, the property of an intestate remains subject to the control of the district court *and to the possession of the administrator appointed to administer the estate. Davis* at ¶ 8, 95 P.2d at 857; *Seal* at ¶ 0, 35 P.2d at Syllabus 3. (Discussion of this proviso was unnecessary for the disposition of the issues in *DeWitt.*) This rule of law is succinctly set forth in 84 O.S.1991 § 212:

> The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the district court, and to the possession of any administrator appointed by that court for the purpose of administration.

*Accord Smith v. Citizens Nat'l Bank in Okmulgee,* 1951 OK 136, ¶ 26, 232 P.2d 618, 623; *In re Pryor's Estate,* 1947 OK 48, ¶ 25, 181 P.2d 979, 984.

¶ 17 Also relevant to this issue is 58 O.S. 1991 § 290 and *Litz v. Exchange Bank of Alva,* 1905 OK 76, 83 P. 790. Section 290 provides:

> The executor or administrator is entitled to the possession of all the real and personal estate of the decedent ... until the estate is settled or delivered over by order of the district court to the heirs or devisees....

Furthermore, the Court in *Litz* held, "[T]he right to the possession of personal property between the time of the death of the intestate and the granting of letters of administration is by operation of law suspended and held in abeyance." *Id.,* 1905 OK 76 at ¶ 4, 83 P. at 792.

¶ 18 The foregoing authority demonstrates that generally an administrator is entitled to possess the assets of an estate until the estate is settled. However, no administrator was ever appointed here because administration of Harold's estate was never initiated. Typically, then, under such circumstances and pursuant to *Litz,* the right to possess the Truck would have, by operation of law, been suspended and held in abeyance between the time of Harold's death and the granting of

---

1. We recognize the rule set forth in *Schultz v. Evans,* 1951 OK 61, 228 P.2d 626, that "all matters affecting the title of the parties [to a quiet title action under 12 O.S. § 1141] may be litigated and determined, and the judgment rendered therein is final and conclusive as against the parties thereto and their privies." *Id.* at ¶ 13, 228 P.2d at 628. This rule of law presumably applies to a trial court's authority to determine heirs in a quiet title action when the facts of the case necessitate such. See *id.* at ¶ 1, 228 P.2d 626. We note, however, the present case does not involve title to real property under § 1141. Therefore, the above rule is inapplicable here.

letters of administration. The latter never transpired. Accordingly, Michael did not lawfully take possession of the truck and, therefore, could not have lawfully transferred possession of the same to McClellan.

¶ 19 Moreover, we conclude that VCF was entitled to lawful possession of the Truck upon Harold's death. Oklahoma's Uniform Commercial Code, at 12A O.S.1991 § 9–503, provided that a secured party has the right to take possession of collateral upon default. (Section 9–503 has since been renumbered to 12A O.S.2001 § 1–9–609, but the substance of the provision remains the same). The Credit Sales Contract between Harold and VCF also states that VCF may take possession of the collateral in the event of default and it specifies that the death of the buyer constitutes an "Event of Default." Harold's death triggered the Contract's default provision and VCF was entitled to possession of the Truck.

## V. McCLELLAN HAD NO RIGHT TO FORECLOSE ANY LIEN HE HAD ON THE TRUCK

¶ 20 In *Phoenix Ins. Co., Hartford, Conn. v. Diffie,* 1954 OK 146, 270 P.2d 634, the plaintiff's automobile was stored at the direction of the defendant insurance company and was subsequently sold by the garageman to satisfy his storage charges. The insurance company thereafter sought a credit for the storage charges against the insurance proceeds due plaintiff. The Court held:

> The automobile was not stored ... by plaintiff, the owner thereof, or by his agent or any person authorized by him. He was therefore not liable for storage charges. It was stored there by defendant without authority from plaintiff and it alone was therefore liable for such charges, and its storage there by defendant ... did not create a lien against it for such charges. *Williamson v. Winningham,* [1947 OK 231], 186 P.2d 644; *Holland v. Whiteside,* [1935 OK 72, 171 Okla. 397], 43 P.2d 57.

*Phoenix Ins. Co.* at ¶ 30, 270 P.2d at 639. *See also* 38 AM.JUR. 2d *Garages* § 139 (generally, lien created only where vehicle storage authorized by owner or agent). In the pres-

ent case, the facts demonstrate that Michael was not authorized to direct McClellan to store the Truck. Thus, Michael alone was liable for the storage charges and such storage did not create a lien against the Truck for those charges.

¶ 21 Assuming for the sake of argument that Michael did have authority to transfer the Truck to McClellan, we would find that McClellan had no power to foreclose his lien thereon. In *Litz,* the Court quoted with approval the following statement of law: "Between the death of the intestate and the granting of letters [of administration,] the legal title to the personal property of the intestate is suspended and vested in no one." *Litz* at ¶ 6, 83 P. at 792. The *Litz* ruling was further explained in *Simons v. Brashears Transfer and Storage,* 1959 OK 156, 344 P.2d 1107:

> In *Litz* ... we held that a lienor's right to sell the property upon which he has a lien was suspended during the interim between death of the owner and appointment of a personal representative.... A lienor has no title. His power to transfer title exists only by reason of his contractual or statutory right to sell. If such right does not exist, or is suspended, then it follows that he cannot transfer title.

*Simons* at ¶ 7, 344 P.2d at 1110. In the present case, any right McClellan may have had to acquire or transfer title to the Truck was suspended because no personal representative was ever appointed to administer Harold's estate. The same would be true even if McClellan were deemed to have rightfully come into possession of the Truck through Michael. As the *Simons* Court made clear, the fact that possession is rightful does not enable a lienor to transfer title between the time of a decedent's death and the appointment of a personal representative. *Id.* at ¶ 9, 344 P.2d at 1110–11.

¶ 22 Also instructive is *Oil Well Supply Co. v. Cremin,* 1930 OK 122, 287 P. 414, where a judgment debtor of one heir attempted to levy upon the property of another heir, said property having been assigned to the second heir in a probate partition proceeding. The Court held:

[A] judgment duly entered is a lien on the *inherited interest of the judgment debtor*, but it is a lien only on that interest and is not a lien upon the land itself and becomes a lien only upon the land distributed to the judgment debtor, at which time it relates back to the time of its entry on the judgment docket. If the land is never distributed to the judgment debtor, the lien can never attach.

*Id.* at ¶ 37, 287 P. at 419 (emphasis in original). *Accord Smith*, 1951 OK 136 at ¶ 24, 204 Okla. 586, 232 P.2d at 623. Applying *Cremin* to the facts of this case, McClellan's storage lien might fairly be said to constitute a lien on the inherited interest of Michael. If so, it would have become a lien upon the Truck only if the Truck had been distributed by the estate to Michael. Because the Truck was never distributed to Michael, however, the lien never attached.

 ¶ 23 Independent of the above analysis, we also find any lien McClellan may have had on the Truck was forfeited by him for failing to comply with 47 O.S.1991 § 964. This section provides in relevant part:

Whenever a vehicle that is subject to registration in this state has been stored, parked or left in a garage, trailer park, or any type of storage or parking lot for a period of more than thirty (30) days, the owner of the garage, trailer park or lot shall report the make, motor and serial number of the vehicle to the Department of Public Safety. Provided, these provisions shall not apply where arrangements have been made for continuous storage or parking by the owner of the motor vehicle so parked or stored, and where the owner of said motor vehicle so parked or stored is personally known to the owner or operator of the garage, trailer park, storage or parking lot. Any person who fails to submit the report required under this act at the end of thirty (30) days shall forfeit all claims for storage of the vehicle.....

¶ 24 Appellees argue, and the trial court found, that § 964 is inapplicable here because the Truck was not "subject to registration in this state" at the time of the foreclosure because it was registered in the State of Texas pursuant to the International Registration Plan (IRP). We disagree. Title 47 O.S. Supp.1997 § 1120 permits owners of vehicles engaged in interstate commerce to register their vehicles in other states. Vehicles so registered under the IRP are considered fully licensed in Oklahoma and are exempt from all further registration. However, after Harold died and his Truck was parked in Oklahoma City, the Truck ceased to be used in interstate commerce, a prerequisite for registration under § 1120. The Truck was therefore "subject to" registration in Oklahoma the same as any other vehicle in this state that is not used in interstate commerce. *See* 47 O.S. Supp.1998 § 1105(B) (the owner of every vehicle in this state is required to possess a certificate of title with the exception of "those vehicles registered pursuant to Section 1120 ..., previously titled in another state *and engaged in interstate commerce ....*") (emphasis added).

 ¶ 25 We also reject Appellees' argument that § 964 is inapplicable because arrangements were made for continuous storage of the Truck by someone McClellan believed to be the owner. Whether McClellan actually knew who the owner of the Truck was is a matter of debate. McClellan testified: (1) the subject of the Truck's ownership was not discussed, (2) he thought Michael owned the Truck, and (3) he believed Michael and Harold were the same person. In his deposition, however, McClellan stated that Michael told him the truck belonged to Harold. Notwithstanding, we conclude that § 964 requires personal knowledge of the *record* owner of the stored vehicle.

¶ 26 Prior to the enactment of the Motor Vehicle License and Registration Act, 47 O.S. Supp.1977 § 22 et seq. (now Oklahoma Vehicle License and Registration Act, 47 O.S.2001 § 1101 et seq.), "motor vehicle certificates of title in Oklahoma [were considered] documents of convenience rather than documents of ownership." *In re Foster,* 1980 OK 37, ¶ 9, 611 P.2d 232, 234. However, "[n]ow, under the Oklahoma Act, certificates of title are 'proof of ownership.'" *Mitchell Coach Mfg. Co., Inc. v. Stephens,* 19 F.Supp.2d.

1227, 1233 (N.D.Okla.1998), *quoting* 47 O.S. § 1103, which states in relevant part:

It is the intent of the Legislature that the owners of every vehicle in this state shall possess a certificate of title as proof of ownership and that every vehicle shall be registered in the name of the owner or owners thereof.

¶ 27 Consistent with the legislative intent expressed in § 1103, we believe the term "owner" as used in § 964 means the record owner. Here, Harold was the record owner of the Truck as evidenced by the Truck's Certificate of Title. For the exception in § 964 to apply, McClellan would have had to contract with Harold for storage of the Truck. Because this was not possible, the exception in § 964 does not apply here and McClellan was obligated to comply with the statute's reporting requirement. Having failed to do so, McClellan forfeited his claim for storage charges. His garageman's lien was therefore void; his foreclosure of the Truck was a nullity; and he was not legally entitled to retain the proceeds of the sale. Accordingly, the judgment in favor of McClellan in Case No. 96,105 is reversed. The award of prevailing party attorney fees to McClellan in Case No. 96,610 is likewise reversed. *See Schulte v. Apache Corp.*, 1995 OK 148, ¶ 34, 949 P.2d 291, 298.[2]

## VI. AS INNOCENT PURCHASERS, FIRSTAR AND HOUDEK HAVE A SUPERIOR RIGHT TO POSSESS THE TRUCK

¶ 28 As between VCF and Appellees Firstar and Houdek, we find that Firstar and Houdek have a superior right to possession of the Truck. The trial court held that Firstar and Houdek were *bona fide* purchasers for value of the Truck, specifically finding that they had no notice of any claim by VCF

and had no way of obtaining any such notice, and that they justifiably relied upon the Oklahoma Certificate of Title which showed McClellan to be the owner of the Truck and showed there were no liens on the Truck. We hold that such ruling is supported by competent evidence.

¶ 29 Although we have determined that McClellan did not have the right to acquire title to the Truck—and therefore had no right to transfer title thereto—we hold that Firstar and Houdek now have lawful possession as against VCF. In *Snethen v. Oklahoma State Union of the Farmers Educ. And Coop. Union of Am.*, 1983 OK 17, 664 P.2d 377, the Court held:

It is a general rule of law that no one can confer or transfer a better title than that which he has, unless some principle of estoppel should operate to bar an otherwise superior claim. Neither can a person be divested of his property without his consent. While a good-faith purchaser under a defective title cannot hold against the true owner, he does have lawful possession against all the rest of the world. He is said to have a "qualified possessory right" in the property.

*Id.* at ¶ 11, 664 P.2d at 381 (footnotes omitted). As good-faith purchasers, Firstar and Houdek have lawful possession of the Truck against VCF.

¶ 30 Our decision in this respect is bolstered by *Central Nat'l Bank & Trust Co. of Enid v. Community Bank & Trust Co. of Enid*, 1974 OK 141, 528 P.2d 710, which held:

"Where one of two innocent parties must suffer through the act or negligence of a third party, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss."

---

2. VCF argues that the participation of the OTC in the lien foreclosure process constituted state action and that the OTC's procedures deprived VCF of due process of law. Specifically, VCF complains about the 10 day notice provision of 42 O.S. Supp.1992 § 91(A)(3) and the lack of notice to VCF of McClellan's purchase of the Truck at a so-called "private sale" on June 9, 1999. Initially, we note that VCF has failed to delineate the quantum of notice necessary in a § 91 foreclo-

sure action to satisfy constitutional due process. We also point out that McClellan did not conduct a private sale on June 9, 1999, but rather claimed the Truck at the foreclosure sale on June 7, 1999, and filled out the sale documents two days later. Notwithstanding, resolution of VCF's due process argument is unnecessary because we reverse the effected portion of this case—McClellan's foreclosure—on other grounds.

*Id.* at ¶ 9, 528 P.2d at 713, *quoting Bankers Inv. Co. v. Humphrey,* 1962 OK 51, 369 P.2d 608. Here, McClellan was able to obtain putative title to the Truck because VCF failed to defend its lien at foreclosure. The record contains competent evidence to support the trial court's ruling that the Notice of Sale was properly delivered to VCF in accordance with the company's usual practice for mail delivery.[3] Had VCF acted on the Notice, Firstar and Houdek would not have been in the position to suffer a loss through McClellan's acts. Therefore, the loss of possession here must fall upon VCF.

### VII. FIRSTAR IS THE LEGAL OWNER OF THE TRUCK

¶ 31 While the question of rightful possession has been settled, the foregoing analysis leaves unresolved the issue of legal title to the Truck. The unique facts of this case appear to present an issue of first impression in this state. However, the Supreme Court of Virginia recently addressed a substantially similar problem in *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.,* 256 Va. 243, 506 S.E.2d 14 (1998), and we find its decision sound and persuasive. There, a vehicle owner applied to the Virginia Department of Motor Vehicles (DVM) for a duplicate certificate of title and fraudulently represented that Toyota's security interest had been released. The DVM thereafter issued a new title showing no lienholder and the debtor subsequently sold the car to a bona fide purchaser for value. *Id.* at 15. Recognizing the usual rule that a security interest must appear on the face of the title, the court held that where there are two innocent parties, the *bona fide* purchaser for value was entitled to take free of the unrecorded security interest. *Id.* at 16.

¶ 32 In reaching its decision, the Virginia Supreme Court reasoned that a purchaser for value must be able to rely on the certificate of title without resorting to outside investigation:

> The motor vehicle titling statutes were enacted to protect the public by providing for the issuance of certificates of title as evidence of ownership of motor vehicles and to provide potential buyers and creditors with a single place where information about the status of motor vehicles could be found.

> \* \* \*

> [The titling statutes] specifically provide[ ] that a certificate of title showing a security interest "shall be adequate notice to the Commonwealth, creditors and purchasers that a security interest in the motor vehicle exists." We have recognized that the converse is also true.

> [W]hen a certificate of title is issued which fails to show a lien or encumbrance, it is notice to the world that the property is free from any lien or encumbrance, and if transferred to a *bona fide* purchaser the latter would obtain a good title.

*Maryland Credit* [*Fin. Corp. v. Franklin Credit Fin. Corp.,* 180 S.E. 408] at 409. To hold otherwise would eliminate the ability of potential buyers and lenders to rely on the information contained in certificates of title.

> Inevitably, there will be occasions when the information regarding the status of liens contained in a certificate of title will be in error. If the erroneous information is a notation that no liens exist against the vehicle, the interest of the *bona fide* purchaser for value prevails over the interest of the creditor with a security interest in the motor vehicle. *Id.* This rule applies whether the error was the result of an innocent mistake or, as in this case, of

---

3. The trial court specifically ruled McClellan was not required to mail his Notice of Sale to VCF's registered office or designated service agent in Oklahoma as listed with the Oklahoma Secretary of State. VCF contends such ruling was in error. We disagree. Title 42 O.S. Supp.1992 § 91(A), the statute under which McClellan claimed his lien, requires that a copy of the notice of foreclosure "shall be mailed to the owner and any other party claiming any interest in said property if known, at their last-known post office address...." VCF's last-known post office address, *as listed by VCF on the original Texas Certificate of Title,* was its business address in North Carolina. By mailing the Notice to said address, McClellan did all that was required of him under Oklahoma law.

fraudulent acts by the owner. A rule which allowed reliance on the absence of lien notations on a certificate of title if such absence resulted from an innocent mistake or clerical error but not if such absence resulted from fraud would negate any ability to rely on the certificate of title. Under such a rule, a potential purchaser or lender would always have to conduct an independent search to determine if, in fact, there are no liens against the vehicle, thus defeating the intent of the General Assembly in creating a single repository for recording liens against motor vehicles.

*Id.* at 15–16.

¶ 33 As was true in Virginia, the Oklahoma Legislature has created a single repository for recording liens against motor vehicles in this state. Based upon the facts that all vehicle owners in this state must possess a certificate of title, 47 O.S.2001 § 1103, and that all vehicle liens must be recorded on such certificates, 47 O.S.2001 § 1110, we similarly hold that potential purchasers and lenders must be able to rely on Oklahoma certificates of title to determine whether a vehicle is subject to an encumbrance. We therefore adopt the ruling of the Virginia Supreme Court and hold that when a certificate of title fails to show a lien or encumbrance, a *bona fide* purchaser of the vehicle obtains good title. Because Firstar was a *bona fide* purchaser here, it has legal title to the Truck. Accordingly, the trial court's judgment in favor of Firstar and Houdek in Case No. 96,105 is affirmed.

## VIII. ATTORNEY FEES AWARDED FIRSTAR AND HOUDEK MUST BE RECONSIDERED

¶ 34 In issuing its judgment below, the trial court ruled that VCF failed to sustain its burden of proof on *any* of its claims for relief. As this opinion illustrates, such is not the case. VCF clearly had a superior possessory interest in the Truck prior to the time the Truck was sold to Firstar and Houdek. Further, although Firstar and Houdek currently have a possessory interest superior to VCF, we emphasize that all three are innocent parties. Because the trial court entered its attorney fee award while under the belief that VCF lost on all issues, we remand the fee award in Case No. 96,610 with respect to Firstar and Houdek with directions that the trial court reconsider the same in light of this opinion.

¶ 35 CASE NO. 96,105 AFFIRMED IN PART; REVERSED IN PART.

¶ 36 CASE NO. 96,610 REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

ADAMS, J., sitting by designation, concurs in result; BUETTNER, J., concurs.